In the Matter of the Petition of the UNION ELEVATED RAILROAD COMPANY OF BROOKLYN Relative to Acquiring Title to Lands, etc.

The proceeding authorized by the Rapid Transit Act (Chap. 606, Laws of 1875), as a substitute for the consent of property owners when the requisite consents cannot be obtained, is a distinct and special judicial proceeding, having its inception in the application by the railroad company proposing to construct and operate a railroad, and thereafter depending within the jurisdiction and control of the tribunal which the legislature has empowered to entertain it.

That tribunal, to wit, the General Term of the Supreme Court, is clothed with original and exclusive jurisdiction and with power to enforce the right of eminent domain sought to be exercised by the corporation in the acquisition of the right or license to construct and operate its railway.

The creation of such a tribunal is within the power of the legislature.

In delegating to private corporations, established to carry on enterprises of a public nature, the power to exercise the right of eminent domain, the legislature may prescribe how the power shall be exercised.

As the proceeding is one *in rem,* and as the tribunal, so created, has cognizance of all questions affecting the rights of property-owners, its

determination as to any of those questions, in a case where it has acquired jurisdiction, is conclusive and may not be questioned collaterally.

·One of the questions necessarily comprised within and determined by the decree is as to the valid, legal organization of the petitioning corporation; it is only a corporation *de jure*, to which can be delegated and which can exercise the right of eminent domain.

.*It seems*, however, that as the proceeding is one *in invitum*, it must fail unless there be a compliance with the act in these particulars, *i. e.*, a due hearing of all the parties interested, a determination of the commissioners that the railway ought to be constructed, and a decree of the court confirming the determination of said commissioners.

Notice, also, or the means of knowledge of the hearing is necessary.

The method of giving notice of the hearing, not having been prescribed by the act, it is left with the tribunal created thereby.

.A personal notice is not requisite to constitute the proceeding "due process of law;" a notice by publication is sufficient.

In proceedings by the U. E. R. R. Co. of Brooklyn, a corporation claiming to have been incorporated under said act, to acquire title to and interest in lands necessary for the construction of its road, it appeared that upon failure to obtain the requisite consents of property-owners, an order appointing commissioners to determine as to whether the proposed road ought to be built was granted upon petition of the company, which order provided for notices to be given by the commissioners of the time and place of the hearing before them, by publication in designated newspapers and by posting such notices conspicuously in a number of places along the proposed route. The order also required the giving of a previous notice of the presentation of the commissioners' report to the General Term for confirmation, by publication and by service of a copy upon all who had formally appeared by attorney. Notices were given as required, the commissioners reported in favor of the construction of the road and the report was confirmed by order of the General Term. *Held*, that the landowners were estopped thereby from claiming that the petitioning company was not duly incorporated; that having had due notice and an opportunity to raise the question in the former proceeding their failure to avail themselves thereof did not destroy the effect of the decision therein, and such decision, standing unreversed, precluded them from afterwards raising the question.

*It seems* that had the opposing landowners appeared in the former proceeding and raised the question, the decision of the General Term thereon would have been reviewable on appeal.

(Argued December 10, 1888; decided January 15, 1889.)

Appeals from four orders of the General Term of the Supreme Court in the second judicial department, made

June 25, 1888, affirming orders of Special Term granting the application of the petitioner for the appointment of commissioners to appraise the compensation to be made to the owners or persons interested in the streets and premises in the city of Brooklyn sought to be acquired by the petitioner for the purposes of its road.

The application was opposed by the landowners on the ground that the petitioner had not been legally incorporated.

It appeared that in February, 1886, upon a verified petition of property-owners under and pursuant to the act (Chap. 606, Laws of 1875), the mayor of the city of Brooklyn, within the bounds of which the proposed railroads were sought to be located, appointed commissioners to perform the duties required by that act. The commissioners organized and determined as to the necessity of the road, located its routes, adopted a plan of construction and prepared articles of association naming therein the corporation, the Union Elevated Railroad Company. The stock was subscribed for and a board of directors elected. The company obtained the consent of the local authorities, but having failed to obtain the consent of the requisite number of landowners applied, on petition, to the General Term of the Supreme Court for the appointment of commissioners, as prescribed by said act, to determine as to whether the proposed road ought to be built. An order was granted appointing such commissioners, directing them to appoint, in writing, a place within the city of Brooklyn and a time not less than eight or more than fourteen days thereafter when they would hear all parties interested. The order further provided that such notice should be given by publication in certain newspapers named " and by posting a copy of such notice in a conspicuous place in at least twenty places along said routes;" also, that they should give notice of the presentation of their report for confirmation by publishing the same four times consecutively in the newspapers so designated, and by serving a copy of such notice at least six days previous to such intended presentment and application upon all the attorneys who shall have served a written notice

of appearance. These provisions of the order were complied with by the commissioners, and their report determining that all of the proposed routes, with the exception of one, ought to be constructed and operated, was confirmed by order of the General Term.

*B. F. Tracy* for appellant. In order to sustain proceedings by which a body claims to be a corporation, and as such empowered to exercise the right of eminent domain, and under that right to take the property of a citizen, it is not sufficient that it be a corporation *de facto*; it must be a corporation *de jure*. (*Cable Co.* v. *Mayor, etc.*, 104 N. Y. 43.) Corporate property under the Constitution and laws takes the same protection as private property. (23 Wend. 540, 576; 12 N. Y. 121; 114 U. S. 501; *Kings County Case*, 105 N. Y. 119, 120.) The corporation thus formed has an exclusive right to construct and operate a railroad in the streets named until that right has been forfeited by some failure to comply with the provisions of its charter. (*Thompson* v. *People*, 23 Wend. 540.) In construing statutes, courts are required to be guided by the intent of the legislature, taken according to the necessity of the matter, and to that which is consonant to reason and good discretion. (*Stradling* v. *Morgan*, Plowden, 204; *Kings County Case*, 105 N. Y. 118.) As the route of the Kings County Elevated Railway had been located by the mayor's commission and the consent of the common council of the city of Brooklyn to the construction and operation of an elevated railway, over and along such route obtained, nothing remained to be done by the corporation before entering upon the street and constructing its road, but to obtain the consent of the property owners abutting upon the streets. (*In re Kings County El. R. R. Co.*, 105 N. Y. 111.) Where a power of franchise is created by a statute which fixes or prescribes the mode of its exercise, it must be exercised in the mode pointed out by the act, and in no other, and those upon whom it is conferred are confined strictly to the act creating it. (Smith's Com. on Stat. & Const. Law, 790, § 677; *Head*

*& Amory* v. *Providence Ins. Co.*, 2 Cranch, 127.)   Requ e ments intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be, and generally would be, injuriously affected, are not directory, but mandatory.   The power of the officer in such cases is limited by the manner and conditions prescribed for its exercise. (*French* v. *Edwards*, 13 Wall. 506 ; *N. Y. C. Co.* v. *Mayor, etc.*, 104 N. Y. 1, 43 ; *In re N. Y. C. Co.*, 109 id. 32, 40 ; *Davison* v. *Gill*, 1 East, 64 ; *People* v. *Gardener*, 24 N. Y. 583, 586 ; *In re Page*, 107 id. 266.) A charter which does not require a company organized to build and complete its road within a definite and certain time is absolutely void. (*In re Cable R. R. Co.*, 104 N. Y. 1.) Where a statute creates new rights, exemptions and immunities, dependent upon a compliance with precedent conditions, such conditions must be substantially and even strictly complied with. (*Argall* v. *Smith*, 3 Denio, 435, 436.)   Courts are not concluded in one case by questions which were not raised or discussed in another and different litigation. (*Rogers* v. *Laytin*, 81 N. Y. 642 ; *Pratt* v. *Strong*, 3 Keyes, 53 ; *Jewell* v. *Steenburgh*, 58 N. Y. 85, 93 ; *Hibbard* v. *Haughian*, 70 id. 54, 60 ; *Nelson* v. *Village of Canisteo*, 100 N. Y. 86, 93.)

*George W. Wingate* and *George Hoadly* for respondent. Where parties have acted in good faith the court will construe a statute so as to preserve them from loss if possible. (*In re N. Y. El. R. R. Co.*, 70 N. Y. 371.)   The circumstances leading to the enactment of a statute may sometimes be considered in aid of its interpretation. (*People* v. *M. B. R. R. Co.*, 84 N. Y. 565 ; Dwarris on Stat. 696.)   The principle that the rights of the public are never presumed to be surrendered to a corporation will not be so applied as to defeat the manifest intention of the legislature to be gathered by reference to the subject-matter contemplated, and the end to be accomplished by the corporation. (*Curtis* v. *County of But-*

*ters*, 24 How. [U. S.] 435 ; *Moran* v. *Comrs.*, 2 Black [U. S.] 722.) The courts will give the charter such a construction as is necessary to effectuate all the powers, privileges and immunities conferred by it, and as is necessary to carry into full effect its purposes and objects. (*Rogers* v. *Bradshaw*, 20 Johns. 735 ; *Enfield Toll Bridge Co.* v. *H. R. R. Co.*, 17 Conn. 454 ; *B. W. P. Co.* v. *W. R. R. Co.*, 23 Pick. 360.) The courts below were correct in holding that the act did not require the location of stations, or the adoption of a rigid plan from which no deviation should be permitted, irrespective of the growth of the city or the vicissitudes of business. (*In re N. Y. C. & H. R. R. R. Co.*, 77 N. Y. 248, 249, 254, 256 , *In re N. Y. &. H. R. R. Co.*, 46 id. 551, 553.) The reliance by the commissioners upon the established precedents, which had not only been before the courts, but which had been followed by all other commissions acting under the Rapid Transit Act, was proper. (*N. Y. C. Co. Case*, 104 N. Y. 1, 32, 33 ; *Easton* v. *Pickersgill*, 55 id. 310 ; *Power* v. *Village of Athens*, 26 Hun, 282 ; 99 N. Y. 592, 602 ; *Fort* v. *Borch*, 6 Barb. 60, 73 ; *Dubois* v. *Brown*, 1 Dem. 317 ; *Hersee* v. *Porter*, 100 N. Y. 403 ; *Stuart* v. *Laird*, 1 Cranch, 299, 309 ; *Edwards* v. *Darby*, 12 Wheat. 206 ; *U. S.* v. *Semple*, 105 U. S. 97 ; *Ruggles* v. *Illinois*, 108 id. 526 ; *U. S.* v. *Graham*, 110 id. 219 ; *U. S.* v. *Gilmore*, 8 Wall. 330 ; *Smythe* v. *Fiske*, 23 id. 374, 382 ; *U. S.* v. *Moore*, 95 U. S. 760, 763 ; *U. S.* v. *Pugh*, 99 id. 265, 269 ; *Hahn* v. *U. S.*, 107 id. 402, 408 ; *Five Per Cent. Cases*, 110 id. 471, 485 ; *Hoyt* v. *Martens*, 16 N. Y. 231, 233 ; *Harris* v. *Jecks*, 5 id. 521 ; *Brown* v. *U. S.*, 113 id. 568 ; *Yates* v. *Lansing*, 9 Johns. 423 ; *Lloyds* v. *Taylor*, 1 Dallas, 17 ; *Constantine* v. *Van Winkle*, 6 Hill, 205 ; *Jackson* v. *Gilchrist*, 15 Johns. 110 ; *Troup* v. *Haight*, Hopkins, 239–250 ; *Hyrault* v. *Houghtaling*, 1 Hill, 636.) Every proposition in issue in a case which, under the issue in any proceeding may be fairly submitted for judicial decision, becomes *res adjudicata*, matter of estoppel by judicial record, as against all persons who had the right to make controversy in the pending case. (*Bell* v. *Merrifield*, 109 N. Y. 203, 210 ; *Henderson* v. *Henderson*, 3 Hare, 115 ;

*Bendernagle* v. *Cocks*, 19 Wend. 207; *Aurora City* v. *West*, 7 Wall. 82; *Gould* v. *E. & C. R. R. Co.*, 91 U. S. 526; *Miller* v. *Covery*, 1 Wend. 487; *Pray* v. *Hegeman*, 98 N. Y. 351, 358; *Brown* v. *Maryland*, 24 Eng. and Am. R. R. Cas. 192; *White* v. *Coatsworth*, 6 N. Y. 143; Herman on Estop. [2d ed.] § 440; *Secomb* v. *R. R. Co.*, 23 Wall. 108; *Allen* v. *R. R. Co.*, 15 Hun, 80; *Demarest* v. *Darg*, 32 N. Y. 290; 1 Herman on Estop. chap. 5, §§ 290, 345.) The proceeding in the Supreme Court is *in rem*, and, therefore, binds the whole world; not merely the owners of adjacent property, but all persons otherwise interested or who may become interested in the construction and operation of the road. (2 Wood's Ry. Laws, 831; *Cupp* v. *Comrs. of Seneca Co.*, 19 Ohio St. 173, 182; *In re B. W. & N. R. R. Co.* 19 Hun, 314; *Garrison* v. *City of New York*, 21 Wend. 196, 204; *People* v. *Smith*, 21 N. Y. 595; *In re Mayor, etc.*, 99 id. 569; *Woodruff* v. *Parham*, 8 Wall. 138.) The fact that there were several other elevated roads organized prior to the union did not debar the commissioners that organized the former from locating the routes in the same streets as were covered by their routes. (Laws 1875. chap. 606, § 4; Laws 1881, chap. 485, § 1–3; *N. Y. C. Co.* v. *Forty-second St. R. R. Co.*, 13 Daly, 118; *People* v. *O'Brien*, 45 Hun, 529; *Waterbury* v. *Dry Dock Co.*, 54 Barb. 388; *In re Kings Co.*, 105 N. Y. 121, 122.) The action of the General Term of the Supreme Court in confirming the determination of commissioners, by it appointed under the fourth section of the Rapid Transit Act, that the Union Elevated Railroad ought to be constructed, was in the exercise of judicial authority, and constitutes a judgment which cannot be collaterally impeached by any party who might have appeared and contested the same. (*In re K. C. El. R. Co.*, 82 N. Y. 95, 99, 100, 102, 103; 104 N. Y. 13.) In affirmative pleading, it is always necessary to aver compliance with or waiver of conditions precedent. (1 Chitty on Pl. 333; Code Civ. Pro. § 533; *Oakley* v. *Morton*, 11 N. Y. 25; *Hosley* v. *Black*, 28 id. 438; *Roberts* v. *Opdyke*, 40 id. 264; *Nelson* v. *Odiorne*, 45 id. 493.) The unanimous con‐

sent of the property-holders would amount to the grant of an easement, subject only to the payment of damages to be assessed under sections 17–25 of the Rapid Transit Act, and forever estop the property holders from disputing that the railway "ought to be constructed." (*Mumford* v. *Whitney*, 15 Wend. 392; *Wolfe* v. *Frost*, 4 Sandf. Ch. 77; *Wiseman* v. *Lucksinger*, 84 N. Y. 36, 41; *Rerick* v. *Kern*, 14 S. & R. 267; *Nelson* v. *Munson*, 24 Hun, 575.) The acceptance of the grant by the railway constitutes a good consideration. (*Pres. Society* v. *Beach*, 74 N. Y. 72; 1 Wood's Railway Law, 609, § 211; *Henderson* v. *N. Y. C. R. R. Co.*, 78 N. Y. 431; *Williams* v. *N. Y. C. R. R. Co.*, 16 id. 109.) By omitting to reserve the right to compensation, consent would imply waiver. (*Pettibone* v. *L. C. & N. R. R. Co.*, 14 Wis. 443.) Consent given to the construction of a railroad in the streets of a city, by a resolution of its common council, cannot be revoked after it has been accepted and acted upon. (*In re Kings Co. El. R. R. Co.*, 105 N. Y. 115; *B. C. R. R. Co.* v. *B. C. R. R.*, *Co.*, 32 Barb. 358; *Atty.-General* v. *Sharp*, 3 Duer, 119; 2 Wood's R. R. Law, 987.)

GRAY, J. The parties, who are affected by these proceedings to acquire title to their property, privileges and easements, to the extent necessary for the construction and operation of an elevated railroad, oppose the same, on the ground that the petitioner never was duly incorporated, that it had no existence as a corporation and has no right to construct and operate a railroad on certain streets, etc. There is no doubt as to the correctness of the proposition, that the right of eminent domain cannot be exercised by a corporation to deprive a citizen of his property, or property rights, except it be a corporation *de jure*; but the question here is whether these parties may, at this day, question the legality of the corporate existence of the petitioner. If by the force or virtue of legal proceedings they have heretofore been brought into court and have had the opportunity of contesting that very question before a competent tribunal, they should not be heard upon it now. For I consider it to be a

well settled principle that the judgment of a court of competent jurisdiction, proceeding upon a matter of which it has cognizance, cannot be questioned collaterally. If it can be shown that upon a prior occasion these appellants, by proceedings competent to effect them with notice, were afforded a time and place for trying out the question they present now, their failure to avail themselves of the opportunity and a decree rendered therein, standing unreversed, must be held to preclude them from afterwards raising such question.

Chapter 606 of the Laws of 1875, commonly known and referred to as the Rapid Transit Act, which lies at the foundation of the proceedings for the construction and operation of steam railways within cities, contains the provision, in its fourth section, "that the consent of the owners of one-half in value of the property bounded on and the consent also of the local authorities having the control of that portion of a street or highway, upon which it is proposed to construct or operate such railway or railways, be first obtained, or in case the consent of such property-owners cannot be obtained, that the determination of three commissioners, appointed by the General Term of the Supreme Court in the district of the proposed construction, given after a due hearing of all parties interested, and confirmed by the court, that such railway or railways ought to be constructed or operated, be taken in lieu of the consent of such property owners." This proceeding to substitute for the consents of property-owners the determination of the commissioners, depends for its success upon the decree of the court named. With respect to the whole matter it is a distinct and special proceeding; having its inception in the application by the company proposing to construct and operate a railroad, and thereafter depending within the jurisdiction and control of the tribunal, which the legislature has empowered to entertain it.

By the seventh section of the act, it is provided that the commissioners, appointed in the first instance by the mayor upon the general application of taxpayers, to determine upon the necessity for steam railways and the location of their

routes, are to prepare articles of association for the company to be formed, and shall embody therein, *inter alia*, the conditions and requirements of the fourth section we have mentioned. This mandatory provision of the seventh section, with respect to the articles of association, makes it perfectly clear that the proviso clause, which we have quoted from the fourth section, is referable to the company to be formed under the act, and is to be construed in connection with the powers and corporate capacities conferred by the statute upon that new corporation. Unless regarded as one available to the corporation to be formed by the mayor's commissioners, the provision mentioned in the fourth section would be senseless.

We find, then, as part of the scheme, that after the mayor's commissioners have set upon its feet the new corporation, its first steps must be in the direction of obtaining the requisite consents of property-owners and local authorities to the construction and operation of its railway along its designated routes. Failing to obtain the consents of the owners of property bounded on the proposed railway route, the company may set in motion a proceeding before the tribunal designated by the legislature, to secure, *in invitum* the non-assenting property-owners, a decree allowing a construction of the railway. It will be observed that the proceedings are hostile and that they must fail, unless in three essential features there is compliance with the act. There must be a due hearing of all the parties interested ; the commissioners must determine that the railway ought to be constructed and, finally, the court itself must set the seal of its confirmation upon the determination of its commissioners by its decree. The creation of this tribunal, with the exclusive jurisdiction to hear and determine the question of whether the proposed railway should be constructed, in the face of the opposition of property-owners affected, is a part of a plan or system, devised by the legislature and framed in the act which it passed. To provide therein for such a tribunal, whose decision might be substituted for the consents of the property-owners, was perfectly competent for the legislative body, as a part of or an incident

to its delegation to the corporation of the power to exercise
the right of eminent domain; by which right the corporation
is empowered to obtain, *in invitum* the owners, the possession
of what is their property.   This delegation of sovereign
power is based on the theory, that as land is held subject to
the right of government to resume its possession at any time
for public use, the construction of a railway is a public use;
in the interest or promotion of which the right of eminent
domain, possessed by the government, may be exercised
through the *quasi* public corporation which is chartered.

We have held that the rapid transit act embraces the whole
law on the subject of the formation of corporations thereunder
(*In re N. Y. Cable R. R. Co*, 109 N. Y. 21); and we can
add here that a system of procedure is provided for, which is
independent and complete, and which is capable of attaining
the end sought, of securing to the corporation, organized
thereunder, full scope for its legitimate action and for the
acquisition of necessary properties.

The statute is not to be construed so literally as to balk the
legislative purpose and to work an injustice or a wrong; it
should receive a construction which will permit of the accom-
plishment of the general purpose of the grant.   An element of
that purpose is the creation of a tribunal, with original juris-
diction and with power to enforce the right of eminent domain,
when sought to be exercised by the corporation in the acquisi-
tion of the right or license to construct and operate its railway.
It is altogether reasonable, as a construction of the grant, to
find the intention of the legislature to be that the determina-
tion of that tribunal, with respect to the opposition of prop-
erty-owners, being made in the inception of the enterprise
should be once and for all.   Otherwise, as is the fact in the
present case, when the company had gone ahead, expending
its moneys and constructing its railway, an abutting owner,
who had stood by while the work was progressing, and per-
haps the company then actively engaged in operating its rail-
ways, might secure a judgment destructive of the corporate
franchises, upon questions which were equally open for asser-

tion by him, before any capital was expended or work undertaken. Any other conclusion would effect a great wrong, and I do not think should receive the sanction of any court of justice.

In the *Matter of the Application of the Kings County Elevated Railway Company* (82 N. Y. 95), it was held, with respect to the determination of the commissioners, appointed by the General Term of the Supreme Court under this very act, that the railroad should be built, that the court, in confirming that report, adjudged upon the reasons for and against the determination. FOLGER, Ch. J., says: "We cannot admit that the tribunal that has the power to appoint commissioners, whose duty it is to make report to the authority that created them, which report is of no effect until confirmed by that authority, is not a tribunal of original jurisdiction, so far as to have the function to review the action and conclusion of its commissioners in all the particulars that enter therein." It was there held that in providing for the substitution of a determination by commissioners, confirmed by the court, for the consents of a fixed proportion of property-owners, a grave provision of the fundamental law was dealt with; referring to the constitutional provision contained in section 18 of the third article of the Constitution; and it was considered not to be reasonable to hold that the Supreme Court at General Term acted only a clerical or formal part, and was without the power to exercise a judgment upon the facts and circumstances of the case.

A tribunal of original jurisdiction, therefore, being established, having cognizance of all questions affecting the rights of property owners, have these parties or their properties been brought within its jurisdiction? Have these questions been adjudged upon by due process of law? It was conceded upon the hearing before the commissioners by the appellants, that the proceedings of the General Term were regular. The order appointing the commissioners was upon the company's petition and provided for notices to be given by the commissioners of the time and place of the hearing

before them, by publication in several newspapers and for posting such notices conspicuously at a number of places along the proposed routes of the company. The act makes no provision as to how notice shall be given; but only provides for a hearing. The order also required the giving of a previous notice of the presentation of the report of the commissioners to the General Term for confirmation, by publication in the daily papers and by service of a copy of the notice upon all who had formally appeared by attorneys.

Proof was made of the giving of the notices called for by this order, and, indeed, I find no dispute raised as to the regularity of the formal proceedings, leading up to the final order of confirmation of the report of the commissioners, which recites the proof of the publication and service of notices, etc.

In the case of *New York Cable Company* v. *Mayor, etc.* (104 N. Y. 1), the appeal was from the order of the General Term refusing to confirm the report of its commissioners. The refusal was based on the ground that the petitioner had not the legal right to construct or operate its railway. That declaration in the order authorized a review by this court of the questions of law involved in the decision of the General Term, and we held that the company had never been validly legally organized, so as to have acquired the right to construct its road. That case decided the proposition that unless validly organized in pursuance of the rapid transit act, a company acquired no right to construct its road and, consequently, could not demand that the Supreme Court confirm the report of its commissioners, as a substitute for the consent of property-owners. I think it follows, logically, from the true construction of the Rapid Transit act and from the decisions in the *Cable Company's* and the *Kings County Railroad Company's Cases* (*supra*), that the General Term is a tribunal of original jurisdiction, whose functions are judicial and whose determination is a judgment upon questions, necessarily comprising

within their scope that of the valid legal organization of the petitioning company. The proceedings before this tribunal are *in rem*, and, under well settled rules, should be conclusive upon all mankind. They are brought against certain property rights to condemn them for *quasi* public uses, in the permitted exercise of the right of eminent domain. The propriety of taking private property for a public use is not a judicial question, but one of political sovereignty.

DENIO, J., said in *People* v. *Smith* (21 N. Y. 598) : "In imposing a tax, or in appropriating the property of a citizen, or of a class of citizens, for a public purpose, with a proper provision for compensation, the legislative act is itself due process of law. * * * It is not necessary for the legislature, in the exercise of the right of eminent domain, either directly, or indirectly through public officers or agents, to invest the proceeding with the forms or substance of judicial process."

The case is cited from as an authority bearing upon the question of a power vested in the legislature to exercise this right of eminent domain, which is without control as to the form or manner of the exercise ; except that compensation must be made and the objects must be within the definition of a public use. As the power may be delegated to private corporations, established to carry on enterprises of a public nature, the legislature may prescribe how the power shall be exercised by them ; which it has done in the case of railway corporations organized under the rapid transit act. The consent of the abutting owner, on the street proposed to be occupied, must be had and it constitutes a species of property or muniment of title (*People* v. *O'Brien*, 111 N. Y. 1), and a right is given to acquire it, *in invitum*, under the provisions of the act, by proceedings before a tribunal especially authorized and empowered by the legislature. The exercise of the right is placed under the control of that tribunal, and provision is made for a hearing of all parties interested ; but the method of giving notice of the hearing is left entirely with that tribunal.

The principles which govern in cases of assessment and taxation are applicable to the decision of the question suggested

in this case, as to whether there has been due process of law. Whether the taking of private property be under the imposition of a tax, or in appropriating it for a public purpose, the right stands on the same basis, and its exercise is purely a matter of legislative regulation and direction.

In *Stuart* v. *Palmer* (74 N. Y. 183), which was a case involving the question of the constitutionality of a law imposing an assessment for local improvement, Earl, J. dicusses, at some length, what constitutes that due process of law which is guaranteed to each citizen by the Constitution. He says, " generally that due process of law requires an orderly proceeding, adapted to the nature of the case, in which the citizen has an opportunity to be heard and to defend, enforce and protect his rights." He reviews many authorities which fully sustain his proposition. Judge Cooley, in his work on Constitutional Limitations (p. 355), says, that " due process of law, in each particular case, means such an exertion of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights, as those maxims prescribe for the class of cases to which the one in question belongs." In *City of Philadelphia* v. *Miller* (49 Penn. 440), it was said by Agnew, J., in speaking of taxation, " notice, or at least the means of knowledge, is an essential element of every just proceeding, which affects the rights of persons or property."

This notice, or means of knowledge, which all the authorities agree to be a necessary part of a proceeding, by which the citizen may be deprived of property, was furnished in the present case. It was not a personal notice, perhaps, as to all or some ; but that is not prescribed by the law, nor is necessary by implication. To hold otherwise would be to lay down a doctrine, which has no support in principle or in authority. It might, and probably would be, practically impossible to personally notify all the property-owners affected by the construction of the railway ; as it might be also in the cases of assessments, or statutory proceedings, which include within their scope the deprivation to a citizen of his property. In *Matter of Empire*

*City Bank* (18 N. Y. 199) the court says, by DENIO, J.: "We have not been referred to any adjudications holding that no man's right of property can be affected by a judicial proceeding unless he have personal notice." It was there held that the Constitution does not positively require personal notice, in order to constitute a legal proceeding due process of law. Consequently, the objection raised in that case, that there was not a personal notice to all the parties to be charged as stockholders of the Empire City Bank, was held untenable, and the proceeding was deemed not to lose the character of legal process, within the constitutional provision, by the omission to require personal notice to be given.

In *Campbell* v. *Evans* (45 N. Y. 356), ALLEN, J., said, with respect to the requisites of a notice to the owner of animals seized by the local authorities on the public highways, that " it is no objection to the proceedings that personal notice to the owner, or other claimant of the property, is not made necessary by the act, or essential to the jurisdiction of the magistrate, or that the proceedings are to some extent summary. The proceedings are in the nature of proceedings *in rem ;* the penalty or forfeiture attaching to and being a lien upon the offending animals. * * * Under the statutes of this state there are various proceedings, both *in rem* and *in personam,* in which the party to be affected only has notice by a publication or posting of the summons or notice." It is known that in the United States courts jurisdiction may be acquired in admiralty proceedings by posting a citation under the rules of practice of the court. We hold, therefore, that the proceeding by this company before the Supreme Court at General Term, to obtain the determination provided by the statute, in lieu of the consents of property owners, was a judicial proceeding before a competent tribunal, constituted by the legislature for the purpose ; instituted and maintained against the property rights of citizens, of which they had notice, and where they had an opportunity to come in and litigate the very matters now sought to be put in issue. There is an obvious propriety in so holding ; for there was ample

power to deal with all questions of right and of wrong, and to hold otherwise would be to permit the injustice of a single property-owner being able to interfere with and perhaps destroy an important *quasi* public enterprise.

The distinguished counsel, who argued for the property-owners, suggests that the absence from the record of the petition precludes the point as to the bar of the decree of the Supreme Court at General Term from being insisted upon. While, to that extent, the record before us may be imperfect, yet the decree of that court, taken in connection with all the other proceedings which appear to have been taken by or before the commissioners and the court, and with the concession as to the regularity of the proceedings of the General Term, render the absence from the record of the petition itself not a material defect. Nor does what we have decided in the *Cable Company's Case* conflict with the proposition that the proceeding in the Supreme Court, at General Term, constituted an estoppel upon these appellants. We did hold that unless validly organized the company acquired no right to construct the road, and consequently could not demand that the Supreme Court confirm the report of its commissioners, as a substitute for the consents of owners, and that there was no basis for the petitioner's application, in the refusal by the property-owners of their consents, under the circumstances disclosed. These views were expressed upon the appeal from the order of the Supreme Court, which denied a motion to confirm the report of the commissioners.

It was because the legal questions were raised in that forum, and at that stage of the petitioner's existence, that they were discussed and were reviewable. In this case, had the parties, now opposing the petitioner's effort to carry on its enterprise, raised their objections on a like occasion and before the same forum, they could and would have been heard and disposed of, and, on appeal, the judgment would have been reviewable on the legal propositions involved. The judicial discretion of the Supreme Court at General Term, as to whether the road ought to be built, would not be reviewable, because it

was discretionary and a question of policy; but if the petitioner was alleged not to be a corporation *de jure*, and to have no standing in court to demand anything, or to exercise any right of eminent domain, a denial of its application on any such ground, or the granting thereof in the face of such an objection, would have rendered the judgment reviewable upon that question.

We hold, therefore, that in the proceedings had in the Supreme Court at General Term, upon the occasion of the proceeding to substitute for the consents of property owners the determination of its commissioners, the property-owners had notice of the same and were afforded an opportunity to be heard upon the questions now sought to be raised. The judgment of that court constructively involves the establishment of the facts of legal incorporation and of legal capacity, and, in that respect, judicially estopped the abutting owners from ever afterward raising the question. That judgment is no longer open to collateral attack. We cannot give our approval to the doctrine that these appellants, having had an opportunity, in the first instance, to secure a judgment establishing their rights, could stand by and see the company going on with its work and, upon a subsequent occasion of their own choosing, claim that no day in court was necessary, and that the question may be raised whenever it is sought to divest them of their property rights.

The order appealed from should be affirmed, with costs.

All concur.

Order affirmed.