## In re CITY OF BUFFALO.

### In re WASSON.

*(Superior Court of Buffalo, General Term.　May 3, 1892.)*

1. EMINENT DOMAIN—VALUE OF LAND—EVIDENCE.

    In condemnation proceedings, where one has testified as to the value of the land, the exclusion of his testimony as to the value of sand thereon, if error, is harmless.

2. SAME—JURISDICTION OF SUPERIOR COURT.

    The superior court of Buffalo being one of local and inferior jurisdiction, whose territorial jurisdiction is coextensive with the city limits, the legislature cannot confer on it jurisdiction to entertain proceedings for the selection and location of lands outside the city for park purposes.

Appeal from special term.

Application by the city of Buffalo to acquire lands for park purposes, pursuant to Laws 1887, c. 557. From an order taking certain lands in West Seneca, owned by Miles Wasson, he appeals. Reversed.

Argued before TITUS, C. J., and WHITE, J.

*John Cuneen* and *Stephen Lockwood,* for appellant.　*William F. Mackey,* for respondent, city of Buffalo.

WHITE, J.　This proceeding is founded upon chapter 557 of the Laws of 1887, which is entitled as follows: "An act to authorize the park commissioners of the city of Buffalo to select and locate such grounds as may be deemed desirable for park purposes in the Thirteenth ward of said city, and in the town of West Seneca, Erie county." The body of the act provides, among other things, that the park commissioners may select and locate such lands in the town of West Seneca as may be deemed desirable to be reserved and set apart for one or more public parks, but that before such lands shall be taken by the city of Buffalo the common council of said city shall declare its determination to take and appropriate the lands so selected and located, or so much of the same as the said common council shall determine to take, prescribes the mode of procedure and methods by which the title shall be acquired, and names this court as the one in which the proceeding must be prosecuted; and requires the issue and sale of bonds by the city to pay for such lands as may be taken under the provisions of the act. The method of acquiring the title to the lands, and paying therefor, is essentially different from that prescribed by the charter of the city of Buffalo. The park commissioners selected and located the lands of the appellant in the town of West Seneca as a part of those deemed desirable to be reserved and set apart for park purposes, and thereupon this proceeding was instituted and prosecuted to a final determination in compliance with the statute of 1887. It is claimed by the appellant that the order appealed from should be reversed on the grounds:

1. That testimony offered in his behalf on the hearing before the commissioners was improperly excluded. The testimony excluded was that of David Walker, and was directed to the value of sand shown to exist in a considerable quantity on the lands of the appellant. This witness in fact testified quite at length concerning the situation and condition of the lands, the existence and amount of sand upon it, and gave his opinion of the value of the land as it was. It can hardly be said that the exclusion of his testimony as to the value of the sand alone, even if its admission would have been proper, prejudiced the appellant.

2. The appellant claims that the amount of damages awarded to him was inadequate. The testimony on this point was conflicting, and the finding of the commissioners must be treated as conclusive.

3. The appellant next claims that this chapter 557 of the Laws of 1887, in so far as it prescribes the method or mode of procedure with reference to

lands situated in the town of West Seneca, was repealed by chapter 95 of the Laws of 1890, as amended by chapter 247 of the Laws of 1890, and that therefore, as to the lands of the appellant, this court has no jurisdiction in this proceeding. On the 1st day of May, 1890, the legislature of this state passed an act called and known as the "Condemnation Law," which prescribes the method of procedure in proceedings for the condemnation of real property for a public use; and that method of procedure differs from that prescribed by the act of 1887. The condemnation law went into effect May 1, 1890, and this proceeding was commenced June 9, 1890. The claim of the appellant is that the act of 1890 repealed the act of 1887. A somewhat careful reading of the act of 1890 convinces me that it was intended.to cover the whole subject-matter of the method of procedure in a case like this, as to lands situated outside the city limits, and that it did by implication repeal the act of 1887 so far as it prescribed a method of procedure for acquiring title to real estate situate in the town of West Seneca, and that, since the condemnation law became of force, it has been necessary to conform to its provisions or method of procedure in proceedings to acquire title to real estate situate outside the city limits for a public use by the city of Buffalo. Where a revising statute covers the whole subject-matter of antecedent statutes, plainly, by legislative intent, it is to be deemed to contain the entire law on the subject, and virtually repeals the former enactment. *In re New York Institution, etc.*, 121 N. Y. 234, 24 N. E. Rep. 378; *In re Washington St., A. & P. R. Co.*, 115 N. Y. 442, 22 N. E. Rep. 356.

4. It is next claimed that chapter 557 of the Laws of 1887 is in conflict with section 16 of article 3 of the state constitution, which provides that no local or private bill which may be passed by the legislature shall embrace more than one subject, and that that shall be expressed in its title. The title of the act in question, in terms, mentions but one subject, and that is the conferring upon certain citizens of Buffalo of the authority to select and locate lands which they, the citizens aforesaid, may deem desirable for park purposes. There is no intimation in the title that the act contains any provisions for the maintenance or embellishment of such parks as in the case of chapter 165 of the Laws of 1869, by virtue of which the park commissioners of the city of Buffalo were appointed. It was competent for the legislature to delegate to the park commissioners the right to select and locate lands for public use by the city of Buffalo, and thereby modify its charter in that respect for the occasion; such right of selection and location by virtue of the charter being in the city itself, acting through its common council. There is no restraint upon the exercise of the right of eminent domain by the legislature, except that the property must be taken for a public use, and compensation must be made in the manner prescribed by law. *In re Union El. R. Co.*, 112 N. Y. 74, 19 N. E. Rep. 664; *People* v. *Smith*, 21 N. Y. 598. The selection and location of lands to be taken for a public use under and by virtue of a statute by a city might properly constitute a subject of legislation; and in this case when the legislature, instead of selecting and locating lands to be taken by the city of Buffalo for park purposes directly, by the terms of the statute, as in the matter of the acquisition of certain lands in New York and Westchester counties, (reported in 99 N. Y. at page 569, 2 N. E. Rep. 642,) delegated such right of selection and location to the park commissioners, it but exercised the power it possessed in that behalf; and the designation of such persons as its agents to select and locate was a proper subject of legislation, within the meaning of the constitution. The provisions contained in the body of the act, by which the method of procedure is different from that prescribed by the charter in taking and paying for lands for public use, also constitute a subject of legislation, within the meaning of the constitution. It cannot be said that this last-named subject is expressed in the title of the act. As we have said before, there is nothing in the title of the act to indi-

cate that its body contains provisions on any subject except simply to confer on certain persons authority to select and locate such lands as in their judgment may be deemed desirable for park purposes. In other acts of the legislature on the subject of selecting and taking lands for public uses the title of the bills have expressed in general terms their purpose, as in the 99 N. Y., 2 N. E. Rep., case, where this constitutional question was quite fully considered. The title of the bill in that case (chapter 522, Laws 1884) was as follows: "An act laying out public places and parks and parkways in the Twenty-Third and Twenty-Fourth wards of the city of New York, and in the adjacent district of Westchester county, and authorizing the taking of the lands for the same." No active duty was imposed by the act of 1887 upon the park commissioners of the city of Buffalo. The bare authority was conferred upon them to advise the city of Buffalo to acquire certain lands for park purposes, and the city was left at perfect liberty to act upon or reject such advice. It cannot be claimed that the provisions in the body of the act in question with reference to the taking and paying for lands for park purposes—in other words, the method of procedure therein prescribed—is necessarily germane to, or fairly connected with, or that the same tends to promote, the selection by the park commissioners of lands which they might advise the city to acquire; and the well-settled law concerning such acts of the legislature is that every provision contained in the body thereof must be germane to and fairly connected with and tending to promote the subject embraced in the title. *Van Brunt* v. *Town of Flatbush*, 128 N. Y. 50, 27 N. E. Rep. 973; *People* v. *Supervisors*, 43 N. Y. 10. It is said that "the evil at which the constitutional prohibition was aimed was the danger to be feared from placing in bills largely of a general nature, and having titles expressive only of such nature, provisions bearing upon private interests, or affecting portions of the state or its people, or to mass such provisions in bills with vague or narrowed and deceptive titles, or in bills seemingly, from their titles, to be local or private, to include important provisions of a general or public nature, so that the title of the bills would give no notice to the public or the citizens without, or the legislators within, what provisions, diverse and faulty in subject, might be hidden in their numerous sections. It was believed that in this way laws were enacted unjustly benefiting or harming the individual, or seriously affecting more or less circumscribed portions of the state, or that improper laws were enacted, with no notice to the public or the individual of the legislative purpose; with no notice, in fact, to legislators not in the secret, of what the bill contained on which they were called to vote. The design of the provision was to prevent any individual or knot of individuals from being especially helped or harmed by a bill unless that bill was confined to one subject, and its title expressed that subject, and that there should be no combination in one bill of several private or local subjects." *People* v. *Hills*, 35 N. Y. 449. The only object of the legislature in passing the bill in question, as expressed by its title, was to authorize certain individuals to select and locate lands deemed by them to be desirable for park purposes in the city of Buffalo and the town of West Seneca. As the title of the bill gave no sign or hint that the body thereof contained provisions changing the method of procedure in exercising the right of eminent domain by the city of Buffalo from that prescribed in its charter, it seems clear that that subject of the act is not expressed in its title. *In re Blodgett*, 89 N. Y. 392; *In re Paul, etc.*, 94 N. Y. 497; *People* v. *Allen*, 42 N. Y. 405; *In re Flatbush, etc.*, 60 N. Y. 398; *Astor* v. *Railway Co.*, 113 N. Y. 93, 20 N. E. Rep. 594; *Johnston* v. *Spicer*, 107 N. Y. 185, 13 N. E. Rep. 753. It cannot be said that the purpose or object of the act in question, as expressed in its title, was the taking and paying for lands for public parks by the city of Buffalo. Not a word in the title purports to relate to that or such a subject. For aught that is indicated by the title of the bill in question, it might have

been intended by the legislature as the first step in a scheme to establish a public park by direct action of its own. The power to acquire lands for public uses was possessed by the city of Buffalo, by virtue of its charter, when the act of 1887 was passed. I am of the opinion that the act in question is in conflict with that part of the constitution which provides that no local or private bill shall embrace more than one subject, and requires that subject to be expressed in its title. The legislature had the right to appropriate private lands in Buffalo and West Seneca for public uses. It had the right to select such lands directly, or to delegate the right of selection to others. There is no restraint upon the exercise of the right of eminent domain by the state, except that the property must be taken for public use, and compensation must be made in the manner prescribed by law. *In re Union El. R. Co.*, 112 N. Y. 74, 19 N. E. Rep. 664; *People* v. *Smith*, 21 N. Y. 598.

5. The appellant further claims that this court has not jurisdiction of the subject-matter of this proceeding. By chapter 210 of the Laws of 1839 the legislature created the recorder's court of the city of Buffalo, and conferred upon it power to try local actions arising in said city, and not elsewhere. The recorder, with the mayor and an alderman, or with any two aldermen, was given a criminal jurisdiction as to certain offenses committed within the city of Buffalo. By the constitution of 1846, general jurisdiction in law and equity was vested in the supreme court. It recognized and continued the recorder's court of Buffalo, and other local courts in cities and villages, with the powers and jurisdiction they then possessed, and authorized the legislature to establish inferior local courts of civil and criminal jurisdiction in cities. In 1850 the legislature provided by statute that the recorder's court of Buffalo should thereafter have jurisdiction of an action or proceeding for the recovery of real property, or of an interest therein, or for the determination in any form of any right or interest in real property, or for injuries to real property, where the cause thereof arose, or the subject thereof was situated, in said city. In 1854, by an act of the legislature, the name of the court was changed to the "Superior Court of Buffalo," which act further provided that thereafter said court should have jurisdiction of actions or proceedings for the recovery of real property, or of any interest or estate therein, or for the determination in any form of any such right or interest or claim thereto, and for injury to real property and chattels real, when the subject thereof was situate within the city of Buffalo. By subsequent constitutional provisions the existence of the superior court of Buffalo was recognized and continued, with the powers and jurisdiction it then possessed, and such further civil and criminal jurisdiction as might be conferred by law. By chapter 239 of the Laws of 1873 the legislature attempted to confer general jurisdiction upon this and other superior courts of cities, but the act was held to be unconstitutional. By chapter 139 of the Laws of 1875 and chapter 448 of the Laws of 1876 the legislature extended the jurisdiction of this court, but confined such extension to actions and proceedings where the matter should arise or the subject thereof be situated within the city. If it be competent for the legislature to confer jurisdiction upon this court to entertain and determine proceedings for the condemnation of lands situated without the city for a public use by the city, then such jurisdiction is given by the act of 1887, which in terms provides for the acquisition of such lands by the exercise of the right of eminent domain by the city in this court. The power of the legislature must be found, if at all, in the constitutional provision that this court shall have such jurisdiction in addition to that it possessed at the time of the adoption of the judiciary article of the constitution, January 1, 1870, as might be conferred by law, and unless restrained by constitutional provisions the legislature had the power to confer such jurisdiction. That the constitution does impose such a restraint or limitation upon the power of the legislature, and that it cannot confer jurisdiction upon this court to entertain and

determine this proceeding as to the real estate of the appellant in West Seneca, seems to be firmly established by the decisions of the courts in this state. The proceeding is judicial in its nature. *Donnelly* v. *City of Brooklyn*, 121 N. Y. 9, 24 N. E. Rep. 17. The city court of Brooklyn was created by the legislature in 1849, and occupies the same *status* in the judicial system of this state as the superior court of Buffalo. They are both local and inferior courts, within the meaning of the constitution. In 1871 several persons were killed by the bursting of the boiler on a ferryboat owned by the Staten Island Railroad Company. Suits were brought in the city court of Brooklyn against the company to recover damages for its alleged negligence in causing the deaths. The company had no office or place of business in Brooklyn, and it was served with the summons and complaint in New York. The plaintiff recovered a judgment, which was affirmed on appeal by the general term of the superior court of Brooklyn. The accident happened in the city of New York. The court of appeals held that it was not competent for the legislature to confer jurisdiction of such an action upon the city court of Brooklyn. Local and inferior judicial tribunals are limited in their jurisdiction, in proceedings to acquire real property by the exercise of the power of eminent domain, to the territorial division of the state within and for which such courts are established by the legislature. *Landers* v. *Railroad Co.*, 53 N. Y. 450; *Carroll* v. *Langan*, 18 N. Y. Supp. 290. I can see no distinction in principle between that case and the one at bar, and my conclusion is that the order appealed from should be reversed.

TITUS, C. J. I concur with my associate in the conclusion reached by him, that the order appealed from should be reversed. The act attempts to confer jurisdiction upon this court to appoint commissioners to select and locate lands for park purposes in the town of West Seneca, outside of the city of Buffalo. This court is one of local and inferior jurisdiction. Its territorial jurisdiction is coextensive with the territorial limits of the city of Buffalo; and, when the subject-matter of the action or proceeding is outside the city limits, it cannot take jurisdiction and determine it. *Landers* v. *Railroad Co.*, 53 N. Y. 450. I do not think the act is unconstitutional, (section 16, art. 3,) as embracing more than one subject in the act, not expressed in the title. The proceeding pointed out to acquire title to the lands by the city is fairly within the subject and meaning of the act, as expressed in the title. *People* v. *Briggs*, 50 N. Y. 553; *In re Volkening*, 52 N. Y. 650.