THE GORHAM COMPANY, Respondent, *v.* THE UNITED
ENGINEERING AND CONTRACTING COMPANY, Appellant.

Evidence — action for damages upon contractor's default in
building contract — erroneous admission of evidence as to neces-
sity and expense of work caused by defendant's default.

1. In this action, brought to recover damages because of the
failure of defendant to carry out the terms of a contract with plain-
tiff to construct certain walls under a building, one of the issues
tried was of the reasonable cost and value of the work performed in
doing the work on which defendant had defaulted. For the pur-
pose of establishing plaintiff's claim on that issue it was allowed to
introduce in evidence a bid submitted by persons proposing to make
a contract to do the work in question and the reasonableness of
which bid was not verified by any other evidence. *Held*, that the
evidence was incompetent.

2. For the purpose of establishing its claim on one or more
material issues, plaintiff was allowed to introduce evidence of a pro-
ceeding instituted by the superintendent of public buildings of the
city of New York on notice to plaintiff and its lessor, to which
defendant was not a party, requiring certain things to be done to
make the building affected by the contract safe. This was allowed
on the theory that the proceeding was one *in rem*. *Held*, error;
that the proceeding was one instituted under statutes founded on
the police power, on notice to the parties claimed to be guilty of a
violation of the law, for the purpose of abating a violation; that it
was not one *in rem* and there is no authority which makes the
record of such a proceeding evidence in a private controversy
between one of the parties and a stranger.

*Gorham Co.* v. *United Engineering & Cont. Co.*, 136 App. Div.
938, reversed.

(Argued May 15, 1911; decided June 13, 1911.)

APPEAL from a judgment of the Appellate Division of
the Supreme Court in the first judicial department, entered
February 10, 1910, affirming a judgment in favor of
plaintiff entered upon a verdict.

The nature of the action and the facts, so far as mate-
rial, are stated in the opinion.

*Benjamin N. Cardozo* and *Stephen P. Anderton* for appellant. The court erred in allowing the plaintiff to prove the value of the work by the officers or estimates of contractors, who were not called as witnesses. (*Hine* v. *Manhattan Ry. Co.*, 132 N. Y. 477; *Keller* v. *Paine*, 34 Hun, 167; *Sharp* v. *U. S.*, 191 U. S. 341; *Young* v. *Atwood*, 5 Hun, 234; *Arata* v. *Sullivan*, 63 N. J. L. 46; *Byers* v. *Anderson*, 143 Mich. 178; *Gearty* v. *Mayor, etc.*, 183 N. Y. 233; *Jefferson* v. *N. Y. El. R. R. Co.*, 132 N. Y. 483; *People* v. *Strait*, 154 N. Y. 165; *Ives* v. *Ellis*, 169 N. Y. 85; *Gherky* v. *State Line Tel. Co.*, 122 App. Div. 879; *Ward* v. *Hoag*, 78 App. Div. 510.) The court erred in allowing the plaintiff to prove the proceedings taken by the building department of the city of New York, after this action had been begun, to compel the owners to repair the building. (*Matter of City of N. Y. [O. J. Gude & Co.]*, 122 App. Div. 741; *Egan* v. *Health Dept.*, 20 Misc. Rep. 38; *Louis* v. *Conn. Mut. Life Ins. Co.*, 58 App. Div. 137; *Goldschmidt* v. *M. L. Ins. Co.*, 102 N. Y. 486; *Buffalo Loan Co.* v. *K. T. & M. Assn.*, 126 N. Y. 450; *Maher* v. *Empire Life Ins. Co.*, 110 App. Div. 723; *Davis* v. *Supreme Lodge*, 165 N. Y. 159; *Beglin* v. *Met. Life Ins. Co.*, 173 N. Y. 374.) The court erred in refusing to allow the change of plan from an open cut to a subterranean tunnel to be considered by the jury as bearing upon the extent of the damage caused by the defendant's breach, and also in excluding evidence of that change of plan and of other surrounding circumstances offered for the same purpose. (*N. Y. & N. H. Sprinkler Co.* v. *Andrews*, 38 App. Div. 56; *Bank of Montreal* v. *Recknagel*, 109 N. Y. 482; *Robertson* v. *Ongley Electric Co.*, 146 N. Y. 20; *Chamberlain* v. *Ida*, 181 N. Y. 486; *Norris* v. *Lee*, 136 App. Div. 685; *Wangler* v. *Swift*, 90 N. Y. 38; *Toye* v. *U. D. B. Co.*, 141 App. Div. 332.)

*Peter B. Olney* for respondent. The estimate of Fountain & Choate of the amount for which they would

do the work for the plaintiff, was properly admitted in evidence, (1) as bearing upon the question whether the price paid Brown by plaintiff was a reasonable sum, and (2) because tending to show that in the " usual way," it got the estimate for doing the work from more than one contractor before making the contract. (*Mayor, etc.*, v. *S. A. R. R. Co.*, 102 N. Y. 572; *Nat. Cont. Co.* v. *H. R. W. P. Co.*, 118 App. Div. 665; *Pierce* v. *Cornell*, 117 App. Div. 66.) The record in the proceeding taken by the building department of the city of New York was properly admitted in evidence. (*Bailey* v. *Sundberg*, 43 Fed. Rep. 81.) The rule that the facts and circumstances surrounding the parties and subject-matter at the time they made the contract are admissible in order to enable the court to interpret the words used by the parties in the contract, was not violated by any ruling of the court at the trial. (*Murdock* v. *Gould*, 193 N. Y. 369.)

HISCOCK, J. At the times herein involved the respondent was the lessee of a building situate at the southwest corner of Fifth avenue and Thirty-third street, in the city of New York, which had first been used for hotel purposes and later had been re-built for business uses. The appellant was a contractor which had undertaken the construction of the Manhattan crosstown tunnel of the Pennsylvania, New York & Long Island Railroad Company, the route of which lay through Thirty-third street. Originally it seems to have been expected that this tunnel as it ran by respondent's premises would be constructed by excavation from the surface of the street, and it was anticipated that the operation might impair the condition and safety of respondent's building. Accordingly, in January, 1907, a contract was made between the parties to this action whereby the appellant, among other things, agreed to build a foundation wall and curtain wall under the north wall of respondent's building on Thirty-third street. No time was fixed for the commencement or

completion of the work and, therefore, it was ruled on the trial without objection that reasonable dispatch was required. The appellant so failed to perform or commence its work under said contract that in July, 1907, this action was brought for its alleged default, and in January, 1908, a new contract was made by respondent with another contractor for the performance of the work.

Respondent sought by the action amongst other things to recover for damage to its building because of appellant's failure to fulfill its contract seasonably and also the reasonable cost of doing the work which the latter had contracted to do. On the trial three issues amongst others were sharply contested and submitted to the jury. These were: *First,* whether certain injuries to respondent's building resulted from appellant's failure with reasonable diligence to perform its contract or were the result of other causes; *second,* whether all of the work done by respondent on account of appellant's alleged default was necessary and, therefore, chargeable in any event to the latter; *third,* the reasonable cost and value of the work which respondent did in making up for appellant's default.

Three lines of evidence were introduced by respondent and received to sustain its contention on one or more of these issues, all of which were objected to and are now seriously criticized by the appellant.

The respondent on the appellant's alleged default did not make a general advertisement for bids to do the work which the latter had agreed to do, but requested two contractors to submit bids. One of these was a man named Brown, who subsequently did the work. One of respondent's officers was allowed to testify in substance that after Brown had made his bid he was invited to respondent's office and there the officer in question attempted to persuade him to reduce the amount of his bid; that Brown declined to do this except by a small sum on the ground that he could not afford to do the work for less, and that thereupon the bid was accepted. Appellant insists that

this was an objectionable method of showing that the work was worth the sum charged by the contractor, and for which recovery was subsequently had in this action. Personally, I do not think that this evidence was of sufficient importance to call for a reversal even though it be assumed that it was objectionable. In the course of the trial Brown and others gave evidence tending to show that the work was worth the amount charged in the bid and for which the respondent had recovery, and in view of this evidence it is difficult to see how the conversation in question could have produced any serious result.

The other persons who submitted a bid were a firm named Fountain & Choate. Their bid was offered in response to a letter written by respondent's attorneys and they proposed to do the work for $55,350, which was nearly $10,000 in excess of the Brown bid. This bid was received in evidence "only for the purpose of going to the question of what was a reasonable price for the work that thereafter was alleged to have been done," and it is insisted that it was improper for that purpose. I agree with this contention. The accuracy of the bid and the reasonableness of the amount for which these bidders proposed to do the work involved in this litigation was not verified by any other evidence on the trial, and the ruling, therefore, amounted to this, that an unverified bid was received as some proof of what it was reasonably worth to do the work with which the appellant was being charged. Not only was the accuracy of the bid not directly verified by the examination of any witnesses on the trial but there was an entire absence of evidence showing circumstances which might create an inference that it was a reliable test and measure of values. It was not the result of open and competitive bidding on very precise specifications but was given in response to a private invitation which was somewhat general in its description of the work to be done. Aside from the fact that the bidders' letter head describes them as "Builders," I do not find any evidence which

showed that they were engaged in this kind of work.   Certainly there is no evidence showing that they were customarily engaged in doing it or were advantageously equipped for completing at a reasonable price such a contract as this.   There may have been many reasons which made them unwilling or unable to accept the work at a price which would be regarded as reasonable by those desiring and prepared to do such work.   The very fact that on a contract of this size their bid was nearly 25 per cent higher than that of Brown, who conceded that he made a handsome profit, would seem to indicate that their judgment was not very reliable.   In short there is nothing to bring this evidence within those rules which in exceptional cases do allow the price bid or paid for an article to stand as some evidence of its value, or to free it from those objections which ordinarily apply to hearsay testimony.

Respondent was allowed to introduce evidence of a certain proceeding instituted by the superintendent of buildings of the city of New York addressed to respondent as owner of the building and to one Astor as owner of the ground, requiring certain things to be done to make the building safe and to which appellant was in no manner a party.   This proceeding was begun by a notice served after commencement of this action stating that the building was unsafe and that a survey would be made for the purpose of ascertaining this fact.   This survey was made by an inspector and two architects, one of whom was selected by the respondent, and reported in substance amongst other things that the premises had been made "unsafe and dangerous in the following respects, to wit: In that by reason of the excavation of the tunnel in 33rd St." the walls were unsafe and that the premises "should be immediately made safe by * * * underpinning the said westerly portion of the northerly wall and portions of the adjacent cross walls to solid bottom."   On subsequent application on notice to the Supreme Court for the issue of a precept, findings were made of the

dangerous condition of the premises as stated in the above survey and commanding the superintendent of buildings to render them safe by doing, amongst other things, the underpinning in said survey mentioned, and which corresponded with part of the construction for which respondent recovered in this action. On application by respondent it was permitted to do the work in question if commenced within forty-eight hours, failing to do which the bureau of buildings would do the work, and the expense incurred become a lien on the building. All of this evidence was sufficiently objected to, and its reception is now alleged as serious error.

It is hardly necessary to discuss the proposition that this evidence must have been greatly prejudicial to the appellant. This proceeding instituted by the public authorities of the city of New York alleged and adjudicated two of the important facts which respondent was endeavoring to establish, namely, that the injuries to this building were caused by the excavation of the tunnel, and that the safety of the building would be promoted by doing part of the work which appellant had undertaken to do. It is difficult to see how any class of evidence could have been more potential than this was in convincing the jury that respondent was right upon at least two of the important issues involved in its controversy with the appellant. The only question which affords any opportunity for debate is the one whether the evidence was competent, and the decision of that one does not seem to me to be involved in any considerable doubt.

The counsel for the respondent attempts to maintain the competency of the evidence by the argument that the proceeding was one *in rem*, and, therefore, binding on the appellant, although not in any manner a party thereto, but in my opinion this theory cannot be sustained.

The proceeding was not one *in rem*. It would be difficult, and it is unnecessary to define with accurate completeness such a proceeding, but there are certain essential

features thereof which we may bring to mind for the purpose of testing the proceeding which is now before us. Such a proceeding, as its name implies, is prosecuted against a "thing" instead of a person. The court acquires jurisdiction by possession of this subject-matter rather than by a recognized and effective service of process on some person. By virtue of this possession it determines facts whereon it pronounces judgment which operating upon and through the thing in its possession is conclusive upon all persons having an interest therein although not served with process.

"It is a distinguishing peculiarity of a proceeding *in rem* that the jurisdiction of the court, in the particular case, rests merely upon the seizure or attachment of the property. No personal notice to any individual is required. The *res*, being brought within the jurisdiction of the court, becomes subject to its adjudication, and all parties interested are supposed to be duly apprised of the proceedings, by the mere taking of the property, or by the usual proclamation or published notice. This jurisdiction empowers the court to adjudicate upon the status of the *res*, or to order it to be disposed of in a given way, according to the object of the action." (Black on Judgments, section 794.)

If the proceeding before us were of the character thus described it naturally would have been prosecuted by taking possession of the property in question and this seizure would have been followed by an adjudication that the property was unsafe with directions for its demolition or repair, and no personal service of notice of the various steps, including application for judgment, would have been required or considered appropriate.

As a matter of fact the proceeding was entirely different from such an one as has been outlined. It was entitled "In the Matter of the Application of the City of New York against the Unsafe Building Number 334 Fifth Avenue, John Jacob Astor, Owner of Ground,

Gorham Manufacturing Company, Owner of Building."
No possession was taken of the building. Instead thereof
the proceedings were commenced with a notice indorsed
"Notice of Survey and Summons," directed to "the
above named *persons*," which was personally served, and
"required" them to do certain things. As has already
been stated, this notice was followed by a survey in which
the defendant parties participated. Thereafter personal
notice was given to the parties interested of an applica-
tion on this survey to a term of the Supreme Court for a
precept. On the return of this notice the parties appeared
"and the issues raised by said report or survey having
been tried," the court made findings and directed that a
precept should issue directing certain things to be done
for the purpose of making the building safe, and in case
of default of the owner or lessee to act, the public author-
ities were authorized to take the necessary steps, the
building becoming subject to a lien for the expenses.

Without going further into the details of the proceed-
ing, and without dwelling longer upon those which have
been stated, it seems clear that this was not a proceeding
*in rem*. It lacked the most characteristic features of
such a proceeding as they have already been defined; and
on the other hand, it was marked by those features of
jurisdiction acquired by personal service of notice upon
the parties interested of each step leading up to the final
determination which belong to a proceeding *in personam*.

On proper analysis the proceeding appears to have been
one instituted under statutes founded on the police power,
on notice to the parties claimed to be guilty of a violation
of the law for the purpose of abating the violation, and I
know of no authority which makes the record of such a
proceeding evidence in a private controversy between one
of the parties and a stranger.

In *Beglin* v. *Metropolitan Life Ins. Co.* (173 N. Y.
374) the court had before it the question whether records
of the board of health of the city of Albany showing that

the ancestor of the insured died of a certain disease were admissible, it being relevant to prove that such ancestor did in fact die of the disease mentioned in such records. By the statute in that case the records were expressly made *prima facie* evidence of the facts therein set forth, but nevertheless they were held to be incompetent as evidence, Judge HAIGHT for the court saying: "This statute was a police regulation, required for public purposes and became *prima facie* evidence so far as concerns questions arising under its provisions which involve public rights. But we think it was not the intention of the legislature to change the common-law rule of evidence in controversies of private parties growing out of contract, and that the provisions of the statute should not be construed as applicable to such cases." (p. 376.)

It is also urged by the appellant that the court erred in excluding certain evidence offered by it. As has been stated, the tunnel constructed through Thirty-third street was built without opening the surface of the street but by sub-surface tunneling, and it was urged by the appellant that with this form of construction, walls such as it agreed by its contract to build would have endangered rather than promoted the safety of respondent's building. In explanation of the contract which it did make for the erection of such walls, and to avoid as urged an apparent inconsistency between the contract and its defense, it endeavored to show at various points on the trial that at the time when the contract was made it was expected that the tunnel would be constructed by excavations from the surface of the street, and that under this form of construction the proposed walls would have been helpful, and it claims that it was error to exclude this evidence. I do not think, however, that these rulings involved any such degree of error as would call for a reversal of the judgment. The appellant was permitted to develop, as far as desired, its theory that with a sub-surface tunnel construction the walls proposed by the contract would not have been serv-

iceable, and I think it did sufficiently appear for any purpose of explanation that at the time the contract was made excavation from the surface of the street rather than sub-surface tunneling was contemplated.

I recommend that the judgment be reversed and a new trial granted, costs to abide event.

GRAY, J. I concur with my brother HISCOCK in the conclusion which he reaches that there should be a new trial of this action; but it is upon the sole ground that it was error to admit in evidence the proceeding instituted by the superintendent of the building department against the plaintiff and its lessor. The proceeding was personal as against them and the error in making it a part of the plaintiff's case cannot be said to have been without prejudice to the defendant; inasmuch as the proceeding had determined a fact of serious importance. The evidence was not necessary to make out a case under the contract sued upon. I think that the defendant is entitled to a new trial, in which the case may be submitted to the jury without this prejudicial evidence.

CULLEN, Ch. J., VANN, CHASE and COLLIN, JJ., concur with HISCOCK, J.; GRAY, J., concurs in result in memorandum, with whom WILLARD BARTLETT, J., concurs.

Judgment reversed, etc.