## CHARLES E. TODD, Respondent, v. JOHN H. FERGUSON, Appellant.

Kansas City Court of Appeals, February 19, 1912.

1. **BILLS AND NOTES: No Consideration.** Plaintiff sued on a promissory note taken in payment for certain shares of capital stock in a corporation. The defense was no consideration based on the theory that the corporation had no legal existence and therefore the stock afforded no valid consideration for the note. The corporation was organized under the laws of Missouri as a business corporation, but engaged in a co-operative scheme, its contracts not meeting the requirements of the statutes, it was enjoined by the state from continuing in that business. The plaintiff was secretary and the defendant was vice-president and treasurer of the company. *Held*, that there was no consideration for the note.

2. ———: ———: **Evidence.** The record and judgments of the case prosecuted by the supervisor of building and loan associations was competent to prove the fact that the corporation had been adjudged illegal and the grounds on which the adjudication was based.

3. ———: ———: **Unlawful Conduct.** Although both plaintiff and defendant were in *pari delicto* the defendant may set up his own unlawful conduct upon the principal of public policy *ex dolo malo non oritur actio.*

Appeal from Jackson Circuit Court.—*Hon. W. O. Thomas*, Judge.

REVERSED.

*J. C. Petherbridge* for appellant.

(1) The corporation had no legal existence and was unlawful because the incorporators did not comply with the provisions of article 9, ch. 33, R. S. 1909, relating to co-operative companies, under which it attempted to organize and do business, and therefore, it had no authority to issue stock or to transact any business; and the stock so issued or other business transacted by it was void. Article 9, ch. 33, pages 1237 to 1240, R. S. 1909; Hurt v. Salisbury, 55 Mo. 310. (2) A note given for stock in an illegal or unlawful corporation, or one transacting an unlawful or illegal business, is without consideration, and void in the hands of the original payee. Ryan v. Miller, 139 S. W. (Mo.) 128; Clemshire v. Bank, 53 Ark. 512; s c., 14 S. W. Rep. 901; Tompkins v. Compton, 93 Ga. 520; s. c., 21 S. E. 79; Burton v. Stewart, 62 Barb. (N. Y.) 194. (3) A note given to a corporation not authorized to do business in Missouri is without consideration and void. Swing v. Cider & Vinegar Co., 77 Mo. App. 391; Ehahardt v. Robertson Bros., 78 Mo. App. 404. (4) The law will not enforce a promissory note or contract growing out of an unlawful or illegal

transaction—or against public policy. Bank v. Keith, 85 Mo. App. 410; Fenton v. Ham, 35 Mo. 409; Hamilton v. Scull, 25 Mo. 165; Tyler v. Larimore, 19 Mo. App. 445; Bick v. Seal, 45 Mo. App. 475.

*Ellis, Cook & Barnett* and *Davis & Holmes* for respondent.

(1) Defendant's contention that the corporation had no legal existence is an assumption not only unsupported but contradicted by the evidence. (2) Defendant's point two is not only based upon the false assumption of the fact stated in one, but is insupportable even on the contention that the corporation was engaged in unlawful enterprises. (a) There is no competent proof that the corporation had done unlawful acts. McDonald v. Matney, 82 Mo. 358; McLaren v. Real Estate Co., 126 Mo. App. 254; McKinney v. Guhman, 38 Mo. App. 344; Thrasher v. Green County, 105 Mo. 224; Jamison v. Bigot, 106 Mo. 240; Cravens v. Jameson, 59 Mo. 68; Womack v. St. Joseph, 201 Mo. 467; Ford v. O'Donnell, 40 Mo. App. 51; Coleman v. Insurance Co., 74 Mo. App. 663, (b) Even if the proof submitted be considered competent, unlawful acts on the part of the corporation would not invalidate a bona fide transfer of stock in the corporation where both parties stood on an equal footing. Relfe v. Jones, 4 Mo. 89; De Leon v. Trevino, 49 Texas, 88; Brooks v. Martin, 2 Wall. (U. S.) 70; Bank v. Bank, 16 Wall. (U. S.) 483; Page on Contracts, page 820.

JOHNSON, J.—This is a suit on a promissory note of $515.17, executed and delivered by defendant to plaintiff August 10, 1907, the consideration being the sale and transfer to defendant by plaintiff of certain shares of the capital stock of the Homestead Land & Loan Company. The defense is a plea of no consideration and is based on the theory that the corpor-

ation had no legal existence and, consequently the shares of stock it issued were not property and could not afford a valid consideration for the obligation expressed in the note. A jury was waived and the court after hearing the evidence rendered judgment for plaintiff for the amount of the principal and accrued interest. Defendant appealed.

The material facts of the case thus may be stated: The Homestead Land & Loan Company was incorporated in this state in May, 1907, under the laws governing manufacturing and business companies with plaintiff, defendant, and one Eubank, as the sole incorporators. The articles of incorporation recited that the capital stock of $2,000 had been subscribed and half paid into the treasury and that each of the incorporators had subscribed for one-third of the stock. Eubank was president, plaintiff secretary and defendant vice-president and treasurer of the corporation. The purposes for which it was organized were stated as follows in the articles:

"To buy and to have and to hold real estate in the State of Missouri and elsewhere throughout the United States of America, and to sell, transfer, convey and mortgage the same, and to take, hold and sell mortgages and deeds of trust thereon, to loan money on real estate as security and to take proper conveyances therefor, to plat, divide and subdivide and to improve, grade and adorn the same and to lay out and dedicate for public use, streets, alleys, drives, parks and parkways, to erect residence and other buildings thereon and to let, lease and rent the same and to collect rentals and to enforce the usual and lawful remedies therefor, and generally to make all such contracts with reference to real estate as may lawfully be made by a private or natural person."

The corporation did not engage in any business within the scope of its expressed purposes but devoted its whole energy and resources to the prosecu-

tion of a co-operative scheme, but the contracts it issued and offered for sale to the public did not fulfill the requirements of the statutes relating to co-operative companies (section 3425, R. S. 1909, *et seq.*), and were so devised as to be misleading and deceptive and to enable the corporation to impose on the public. And, further, the requirement of section 3422 of the statutes that a deposit of $25,000 be made with the State Treasurer by each co-operative company was not obeyed, nor did the corporation comply with section 3423, which requires a corporation engaging in such business to file in the office of the supervisor of building and loan associations certain documents including a detailed statement of its plans for doing business, together with copies of contracts it proposes to offer for sale and to procure from the supervisor a certificate authorizing the corporation to do business. The corporation had been doing business, in the manner described, several months when plaintiff sold his stock to defendant and received the note in suit in payment.

Shortly after this sale the State of Missouri, at the relation of the supervisor of building and loan associations brought an action in the circuit court of Jackson county against the corporation and others to enjoin the further prosecution of the business of the company and to wind up its affairs. The petition alleged, in substance, non-compliance with the statutes to which we have referred and that the contracts issued and offered for sale were not in conformity with statutory requirements but were misleading, deceptive, unjust and fraudulent. No defense was interposed and a temporary injunction was issued and served and a receiver was appointed who took charge of the assets of the corporation and administered them under the direction of the court. At the final hearing the injunction was made perpetual. It was also alleged in the petition that defendant was a corporation organized under the laws of Missouri but a formal dis-

solution of the corporation was not prayed for. The action was instituted and prosecuted under the provisions of section 3429 of the statutes. Defendant was not made a party to that suit. The evidence in the record is meager and touches but lightly on some of the most important issues of the case but we do not share the view of defendant that it fails to support the conclusion that the corporation was conceived in sin and born in iniquity and was designed by its authors as a mere instrument to further their schemes for preying upon the public. It is a fair inference from the evidence and, indeed, the only inference open to reasonable minds, that the promoters and incorporators entertained no lawful purpose but brought the artificial entity into being in furtherance of their design to profit at the expense of the credulous public by offering the lure of a seductive bait and, knowing their plans and contracts would not pass muster with the supervisor of building and loan associations, sought to escape his supervision as well as to evade making the deposit required by law with the State Treasurer by incorporating as an ordinary business company for assumed objects peculiar to such companies but which they had no intention of prosecuting.

It is a familiar rule, too well known to require the citation of authorities that the corrective rules and processes of the law are as far reaching as the devices of fraud, especially that species of fraud which seeks to victimize a gullible public. There is no hole too deep and tortuous for the law to explore in hunting fraud to its last refuge. One of the fatal errors fraud feasors invariably make is in acting on the assumption that if they can hide their scheme behind a deed, a written contract, a charter of incorporation, or something else as sacred and formidable, they thereby safely entrench themselves where hostile justice cannot reach them. The fallacy of this idea has been exposed time and again in cases too numerous to men-

tion, but we reiterate what has been said so often that fraud has no sanctuary and the courts will pierce its disguises whatever they may be and expose it in all its nakedness. A certificate of incorporation procured by fraud practiced on the state officers, as in the present instance, will be treated as so much waste paper and the courts will refuse to acknowledge that an artificial infant of such parentage ever was born. We, therefore, hold that the promoters of the corporation were not legally incorporated and, therefore, that the stock issued by the pretended corporation was a nullity and did not constitute any consideration for the note in suit.

But defendant argues that the court erred in admitting in evidence over his objection the petition, judgment, etc., in the case prosecuted by the supervisor. We think that record was competent evidence to prove the facts that the corporation had been adjudged illegal and the grounds on which the adjudication had been based. Virtually plaintiff stood in the relation of a stockholder since stock he claimed to own was the consideration he offered and gave for the note. His stock represented his interest in the assets and business of the pretended corporation and a judgment affecting the very life of the company, though it did not decree a formal dissolution, affected the integral parts of the corporation (its shares of stock) which, combined, constituted the entity. As well talk of sentencing a culprit to jail and exempting his arms and legs from the sentence as to talk of a judgment of practical dissolution of a corporation being *res inter alios acta* as to its stock and stockholders. Plaintiff was in privity with the action, is bound by the judgment to the extent of the interest represented by the stock he owned and the record of that judgment was admissible in evidence for the purposes stated. The cases holding that a stockholder is not bound by an action against the corporation to which he is not a

party are easily distinguishable from the present case.

Further, plaintiff insists that since he and defendant were in *pari delicto* and he has the advantage of holding the promissory note of defendant which on its face betrays no sign of fraud or invalidity, he must recover under the rule that the party on whom falls the necessity of bringing forth the fraud to support his side of the case will not be heard because of his own turpitude. Of course defendant is as deep in guilt as plaintiff is and it ill becomes him to cry fraud. We do not listen to his plea out of any consideration for him for he has forfeited all right to stand erect in a court of justice. Turning to plaintiff we say, You cannot recover because the undisputed facts show you were engaged in an unlawful business, one so unlawful that its existence and continuance would be *contra bonos mores*. The law will not allow anyone to found a legal right on a transaction so immoral, nor will it permit you to hide behind a rule of practice and receive reward from your fraud on the technical ground that you made out a prima facie case without being compelled to exhibit your own wrong.

The rule we are applying thus is strikingly expressed by the Supreme Court of Georgia in Tompkins v. Compton, 93 Ga. 1. c. 525:

"There is no merit in the contention that the defendant cannot defend by setting up his own unlawful conduct. In the case of Bugg v. Towner, 41 Ga. 318, it is said: 'It is objected that the defendant should not be heard to set up the illegality of the transaction for his own benefit.' The reply is, that courts sustain such a defense, not for the sake of the defendant, but upon general principles of public policy. In Holman v. Johnson, Cowper, 343, Lord Mansfield uses the following language, which has heretofore been approved and adopted by this court as a correct statement of the rule on this subject: The objection that

a contract is immoral or illegal as between plaintiff and defendant sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed, but it is founded on general principles of policy, which the defendant has the advantage of, contrary to real justice as between him and the plaintiff, by accident, if I may so say. The principle of public policy is this: *ex dolo malo non oritur actio.* No court will lend its aid to a man upon an illegal or an immoral act. If from the plaintiff's own statement, or otherwise, the cause of action appears to arise *ex turpi causa,* or the transgression of a positive law of this country, then the courts say he has no right to be assisted. It is upon that ground the court goes, not for the sake of the defendant, but because it will not lend its aid to such a plaintiff. So if the plaintiff and defendant should change sides and the defendant were to bring his action against the plaintiff, the latter would then have the advantage of it; for where both are equally at fault, *potior est conditio defenditis.*"

To the same effect is the decision of this court in Funding & Foundry Co. v. Heskett, 125 Mo. App. 516; see, also, the recent decision of the Supreme Court in Ryan v. Miller, 139 S. W. 128.

It follows from the views expressed that the trial court erred in rendering judgment for plaintiff since the note had no consideration.

The judgment is reversed. All concur.