failure to comply with the demand was not evidence of conversion. Gillet v. Roberts, supra; Hill v. Covell, 1 N. Y. 522; Whitney v. Slauson, 30 Barb. 276; Hills v. Snell, 104 Mass. 173, 6 Am. Rep. 216. See, also, Silsbury v. McCoon, 3 N. Y. 379, 53 Am. Dec. 307.

The judgment should be reversed, and the complaint dismissed.

---

(156 App. Div. 719.)

### BILKOVIE v. LOEB.

(Supreme Court, Appellate Division, First Department.   May 2, 1913.)

1. EVIDENCE (§ 334*)—BIRTH CERTIFICATES.

Where a civil action for assault and rape was brought before the alleged birth of plaintiff's child, of which plaintiff claimed defendant was the father, a birth certificate, filed with the department of health, in which defendant was referred to as the father of the child, was inadmissible; such certificates being only competent in so far as they affect public rights, and not as proof of the facts therein recited on an issue of paternity between individuals.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 436, 1266–1272; Dec. Dig. § 334.*]

2. EVIDENCE (§ 188*)—CIVIL ACTION—EXHIBITION OF CHILD TO JURY.

Where, in a civil action for assault and rape, plaintiff claimed that defendant was the father of a child born to her as the result of their intercourse, while defendant denied that he had ever had any intercourse with plaintiff, it was error to permit her, over defendant's objection, to exhibit her child to the jury, and permit them, by comparing the appearance of the child with defendant, to say there was a resemblance between them, as bearing on the issue whether defendant was its father.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 676; Dec. Dig. § 188.*]

Appeal from Trial Term, New York County.

Action by Mary Bilkovie, an infant, by John Volmar, her guardian ad litem, against Eugene Loeb. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial, he appeals. Reversed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

I. T. Flatto, of New York City, for appellant.
Rufus M. Overlander, of New York City, for respondent.

LAUGHLIN, J.   This is an action to recover damages for assault and rape.   The defendant was married, and lived with his wife and their child and his sister in an apartment on the fifth floor of a six-story elevator apartment building having four apartments on each floor, fully occupied by tenants, situate at the southwest corner of Madison avenue and 128th street, and he conducted a bakery on the ground floor of the building.   The apartment consists of a parlor, dining room, maid's room, kitchen, and bathroom.   The parlor was used as a sleeping room by the defendant and his wife, and it and the maid's room fronted on 128th street, and each had a window overlooking the street.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

One of the parlor windows overlooked an adjoining public school building.

The plaintiff entered the employ of the defendant on the 27th day of June, 1910, and she testified that he assaulted and ravished her in the apartment on the 28th day of October, thereafter, between 4 and 5 o'clock in the afternoon. She was then, according to her own testimony, nearly 20 years of age, or older; for she says that she was born in Hungary November 19, 1890, and was 18 or 19 years of age when she came to this country in April, 1909. Her daily work was all in the bakery, and consisted in cleaning and serving coffee and waiting on customers in the bakery until about 3 o'clock in the afternoon, when she customarily went up to the apartment and dressed, and went down and resumed her duties in the bakery three days in the week, and on the other four she remained in the apartment ironing, cleaning or sewing. The defendant's wife also worked in the bakery, and his sister, who was a professional nurse, was away most of the time.

The plaintiff testified that defendant's sister was absent at the time in question; but the latter says that she was in the apartment, and that there was no assault. The plaintiff is wholly uncorroborated, with the exception of an alleged admission by the defendant, made a long time after, consisting, in effect, of an offer to assist her in obtaining relief from her condition of pregnancy. The defendant, however, denied that he made the admission. The plaintiff testified that the defendant never before or after made advances to her, and that he had intercourse with her only once, as the result of which she claims to have given birth to a child on the 26th day of July thereafter.

The defendant denied both the assault and intercourse, and was corroborated by the testimony, not only of his sister, but of his wife, and to some extent by other testimony. There is evidence in the record tending to show that the plaintiff was quite friendly with a caller at about the time in question, and that she admitted that the defendant had not had intercourse with her. On her own testimony, she made a very feeble resistance, and does not satisfactorily, show that she made any outcry. She continued in the employ of the defendant about two months after the alleged assault without complaining to any one, although she had an aunt residing in the city with whom she was on intimate terms.

We have sufficiently stated the evidence relating to the circumstances under which it is claimed the assault was committed to show that the plaintiff has not presented a clear case free from reasonable doubt, which might warrant the court in disregarding substantial errors.

[1] We are of opinion that two errors prejudicial to the defendant were committed on the trial. The action was commenced January 12, 1911, long before the alleged birth of the child. The plaintiff having charged that the defendant was the father of her child, it was proper to show, not only the immediate damages suffered from the assault, but that she conceived and gave birth to a child as the result of the intercourse, in order to corroborate her testimony and entitle her to recover her damages down to the commencement of the action. The plaintiff was permitted to introduce in evidence and exhibit to the

jury, over objection and exception duly taken by the defendant, a transcript of a birth certificate. It showed that there was filed with the department of health on the 29th day of July, 1911, what purported to be a certificate of birth of a female child on the 26th day of July, 1911, of which the mother was not this plaintiff by name, at least, but "Anna Bilkovitz," but of which the defendant was the father, for his name, age, address, and place of birth are correctly given. The certificate was signed by "Anna Elcon, formerly Tulca," and her residence was given as "402 E. 72 St."

It is manifest that this certificate was very damaging evidence against the defendant, and yet it was of no probative value on the questions presented for determination. There was no evidence as to who Anna Elcon was, or what, if anything, she knew about the facts to which she certified, or even as to whether she was a person authorized by the statute (see section 1237, Greater New York Charter [Laws 1901, c. 466]) to file such a certificate, or even whether she actually made the certificate. If such a certificate is competent evidence on the paternity of the child in an action like this between individuals, there would never be any difficulty in presenting a prima facie case, regardless of the facts. But certificates of that class are only competent as evidence in so far as they affect public rights and interests, and not as proof of the facts therein recited on an issue between individuals such as that presented in this action. Gorham Co. v. United E. & C. Co., 202 N. Y. 342, 95 N. E. 805; Beglin v. Metropolitan Life Ins. Co., 173 N. Y. 374, 66 N. E. 102; Maher v. Empire Life Ins. Co., 110 App. Div. 723, 96 N. Y. Supp. 496; Painton v. Cavanaugh, 151 App. Div. 372, 135 N. Y. Supp. 418.

[2] We are of opinion that the learned trial court also fell into error in permitting, over objection and exception duly taken by defendant, the child to be exhibited to the jury. After comparing the appearance of the child and of the defendant, it is more than likely that the jurors saw or thought they saw a resemblance which enabled them to resolve the questions of fact in favor of the plaintiff. The defendant having denied that he had intercourse with the plaintiff at all, if, from the likeness of the child to him, the jury were of opinion that he had been intimate with her, they would naturally accept her testimony that she was overpowered and unable to defend her honor. Such evidence is neither accurate nor reliable, and it was incompetent on this issue. Gray v. State, 43 Tex. Cr. R. 300, 65 S. W. 375; Barnes v. State, 37 Tex. Cr. R. 320, 39 S. W. 684; State v. Neel, 23 Utah, 541, 65 Pac. 494; State v. Danforth, 48 Iowa, 43, 30 Am. Rep. 387.

The sole contention of the learned counsel for the plaintiff with respect to this evidence is that it was not prejudicial. We think it was most prejudicial, and doubtless determined the issue in favor of the plaintiff.

It follows that the judgment and verdict should be reversed, and a new trial granted, with costs to appellant to abide the event. All concur.