STATE OF IOWA ex rel. H. M. HAVNER, Attorney-general, Plaintiff, v. ASSOCIATED PACKING Co. et al., Defendants.

GEORGE C. WILLIAMS, Receiver, Appellee, v. H. C. THOMPSON, Appellant.

No. 41566.

JULY 18, 1933.

REHEARING DENIED DECEMBER 14, 1933.

M. A. Roberts, S. W. Livingston, S. G. Van Auken, and O. M. Brockett, for appellant.

Clark; Byers, Hutchinson & Garber, Bradshaw, Schenk & Fowler, Parrish, Cohen, Guthrie & Walters, and Stuart Ball, for appellee.

KINTZINGER, J.—The Associated Packing Company, a purported corporation, filed articles of incorporation with the secretary of state in October, 1918. The articles were approved, and a certificate authorizing the purported corporation to do business was issued. Its original authorized stock was $2,000,000, which in March, 1919, was increased to $5,000,000. Thereafter through its agents and representatives the corporation obtained a vast number of subscriptions and agreements for the purchase of its stock.

In February, 1920, the attorney-general on behalf of the state of Iowa commenced equitable proceedings against the corporation in the district court of Polk county, Iowa, asking for a revocation of its charter and the appointment of a receiver to wind up its business.

The petition alleged that the corporation had never been organized in good faith for the purpose of conducting a packing business, but was organized solely as a stock selling or promotion scheme; that the original incorporators in the organization of said company "confederated and conspired together for the purpose of defrauding the public in connection with the sale of stock * * * and of making exorbitant, unreasonable and unconscionable promotion profits in connection with the sale of said stock and in the promotion of said corporation."

A trial was had and a decree entered adjudging that

"fraud was practiced upon the State of Iowa in the application made for the charter of the Associated Packing Company by the persons applying for the same, that there had been a conspiracy between the officers of such company and the officers of the Associated Finance Company; that the allegations of plaintiff's petition were true; that the Associated Packing Company was organized for the purpose of making promotion profits, and without the good faith intention of entering into the business of operating a packing plant; that the prayer of the petition of the State of Iowa asking for the dissolution of the corporation, the Associated Packing Company, that its charter be revoked and a liquidation had, be and the same is hereby granted, and the charter of said Corporation is here-

by annulled and revoked and the Corporation is ordered dissolved and its assets distributed."

A receiver was appointed for the purpose of carrying out the provisions of said decree. No appeal was taken therefrom.

The receiver found, among the assets of said purported corporation, a vast number of so-called subscriptions to stock and notes purported to have been given in payment therefor, and instituted proceedings in equity for an order of assessment against all of said subscribers for the purpose of liquidating the business of the defunct corporation. Numerous phases of litigation in connection with these proceedings were instituted, tried, and appealed to this court.

The action for the assessment was resisted by the purported stockholders. The result of such preliminary litigation was an order of court making an assessment of 50 per cent against the balance due on all stock subscriptions. In the equity proceedings for, an assessment, the receiver also asked judgment against the stock subscribers. The order of the lower court authorizing the assessment was sustained by us in Kosman v. Thompson, 204 Iowa 1254, 215 N. W. 261. The order of the lower court in that action refusing to separate and transfer the actions for judgment on the assessments to the law side of the court was reversed; the actions were ordered separated and transferred; the actions for judgment on the assessments were transferred to law, and changes of venue granted.

The action in this particular case is based upon a 50 per cent assessment upon a balance due on a subscription agreement alleged to have been executed by the appellant, as follows:

"Agreement of Purchase of Stock of Associated Packing Company
(An Iowa Corporation)
"Capital, $2,000,000

"312-313-314 Citizens Nat'l Bank Bldg., Des Moines, Iowa.

"Par Value $100 a share, Fully paid and non-assessable.

"I, H. C. Thompson, of Des Moines, State of Iowa, do hereby purchase from you fifty shares of Associated Packing Company stock, and agree to pay you therefor One Hundred Dollars per share, total $5,000.00, payable as follows: Not less than one-fourth cash accompanying this purchase, and the balance thereof as evidenced by my promissory note of even date and number herewith.

"As soon as the total purchase price has been paid in cash, a certificate for the stock hereby purchased is to be delivered to me. Should I fail to complete the payments herein provided for when due, I agree to forfeit the initial payment made hereon to you as liquidated damages. No conditions or representations other than those printed in this agreement are relied upon by me in the purchase of this stock.

"Dated and signed this 26th day of March, 1919.

"[Signed] H. C. Thompson, Purchaser.

"Post Office Address, Des Moines, Iowa.

"Occupation, Farmer, Route 1, Box 213.

"Farrell and Kirkpatrick, Agents."

Across the face in large red letters these words: "This subscription is taken subject to an advance in price."

Action upon this instrument is brought by the receiver of the defunct corporation to recover judgment for a 50 per cent assessment made against a balance of $3,750 alleged to be due upon the defendant's alleged stock subscription.

After many years of litigation it is now urged that this action be finally decided upon its merits and that we determine whether or not a person who subscribed for stock after the original incorporation can be required to pay the balance of his subscription, fraudulently obtained, where the corporation itself was conceived in fraud and its charter revoked. Both of these elements are shown by the pleadings or established by the proof in this case.

Appellee receiver contends that defendant appellant is liable to the receiver for the benefit of the corporation creditors, under the "Equitable Trust Fund" doctrine, under which subscribers to stock are liable for a balance due on their unpaid subscriptions, after the dissolution of the corporation, although it be conceded that the subscriptions were fraudulently obtained, and although the charter of the corporation was annulled, revoked, and canceled for fraud practiced on the state in securing the articles of incorporation.

I. Various phases of this litigation have been in this court at different times. In our rulings on previous phases of this litigation, we studiously avoided determining the question of whether or not the "Trust Fund Doctrine" is now applicable to this case. Such rulings were based upon preliminary phases of this litigation. We there held that this question should be left open for determination

in the law action against the various stockholders upon the assessments upon stock subscriptions.

Kosman v. Thompson, 204 Iowa 1254, 215 N. W. 261, was an action in certiorari. The question involved therein was as to the validity of the proceedings in equity for an assessment against the stockholders for unpaid subscriptions. We therein held that the action against the various stockholders on the assessment was a law action. In that case we said:

"Because we are circumscribed by the narrowness of certiorari, it is not within our power to, and we do not, determine whether or not the incorporation or lack of incorporation of the Associated Packing Company is such as will entitle or defeat recovery on the contracts and notes given for the purchase of stock, nor do we indicate what such decision should be." Kosman v. Thompson, 204 Iowa 1254, 1261, 215 N. W. 261, 264.

In State v. Associated Packing Co., 210 Iowa 754, loc. cit. 766, 227 N. W. 627, 632, we said:

"Notwithstanding the finding of the trial court, we think that, in a preliminary proceeding such as this, *the receiver has such prima facie title* to all of the property which passed into his hands under the orders of the court, including written agreements for the purchase of stock, and notes in connection therewith, *as is necessary in this preliminary proceeding.* If, in any suit at law, the question arises as to whether the defendant became a stockholder of said company, it must be determined on the record made in said suit, and independently of what is herein said." (Italics ours.)

In the same case, on page 771 of 210 Iowa, 227 N. W. 627, 634, we also said:

"But nothing herein contained is to be construed as determining the rights or defenses of any defendant, which are personal to him, in an action at law brought by the receiver against any alleged stockholder to recover on the so-called Trust Fund Doctrine."

We do not construe any of our former rulings as holding that the defense now interposed cannot be set up in a law action upon unpaid stock subscriptions. That question was left open and is now before us for determination.

For the purpose of this case we do not deem it of great im-

portance to determine whether *or not* the stock subscription contract signed by appellant was executory or executed. Where the corporation is duly organized, the liability is the same. Under ordinary stock subscription contracts, in which a liability was sustained under the "Trust Fund Doctrine", the corporations were legally organized and dissolved later because of insolvency, misconduct, or mismanagement occurring *after they were duly and legally organized.* In all of those cases creditors of the corporation extended credit after the stock subscriptions were entered into. This was on the theory that such creditors relied upon such subscriptions in extending credit to the corporation.

The receiver bases his action upon the English "Equitable Trust Doctrine".

II. The courts have not always reached a uniform conclusion as to the test by which the respective rights and liabilities between stockholders and creditors of insolvent corporations are to be determined. The "Equitable Trust Doctrine" has resulted in the general rule that, upon the insolvency of a corporation and the commencement of proceedings to wind it up, the right of a subscriber to its stock to rescind his contract, even though he has been guilty of no laches, terminates as to creditors. This is the old English doctrine, and has been adopted with modification in Iowa. Hinkley v. Sac Oil & Pipe Line Co., 132 Iowa 396, 107 N. W. 629, 119 Am. St. Rep. 564; 14 C. J. 599-600; Osgood & Moss v. King, 42 Iowa 478; State Bank Bldg. Co. v. Pierce, 92 Iowa 668, 61 N. W. 426; Miller v. Hawkeye Gold Dredging Co., 156 Iowa 557, 137 N. W. 507; Lex v. Selway Steel Corp., 203 Iowa 809, 206 N. W. 586.

In Hinkley v. Sac Oil & Pipe Line Co., 132 Iowa 396, loc. cit. 410, 107 N. W. 629, 634, 119 Am. St. Rep. 564, we said:

"The accepted doctrine in England is that a subscription for stock cannot be rescinded where suit is instituted *subsequent to the insolvency of the company* and when its affairs are being wound up. Stone v. City and County Bank, 3 C. P. 28; Oakes v. Turquand, L. R. 2 H. L. 325; Henderson v. Royal British Bank, 7 El. & Bl. 356, 363. It is said that no person who, at the commencement of the winding up, is de facto a member—that is, who has, by a contract not previously avoided, become a member—can withdraw, from the distribution for the benefit of creditors any part of the company's assets, either by recalling money paid by him to the company or by taking himself out of the category of those liable to pay further

calls. In consequence of the distribution of assets amongst creditors, a member cannot insist upon the equity which he might otherwise have claimed to be relieved from his contract with the company. 2 Thomp. on Corp., section 1441.

"But it seems that proceedings in insolvency of some nature must have been begun, or at least resolved upon, or that payment has been stopped by the company by reason of its insolvency. 10 Cyc. 439.

"Substantially the same doctrine prevails in this country, *the difference being due to the fact* that there is no public registration of shareholders here such as is required in England. In Martin v. South Salem Land Co., 94 Va. 28, 26 S. E. 591, it was held that the shareholder cannot rescind his subscription on the ground of fraud as against bona fide creditors after the corporation has stopped payment and become actually insolvent unless he has been diligent in discovering and repudiating the fraud."

"In England the courts have gone further and the settled rule is that a subscriber cannot rescind for the first time, either by notice to the corporation or by action, after the corporation has become insolvent and winding up proceedings have been commenced, even though he has not been guilty of laches either in discovering the fraud or in rescinding after its discovery, the rights of innocent creditors being regarded as superior to the right of a stockholder, even though his subscription has been procured by fraud, and he has not been guilty of laches." 14 C. J. 599.

"In the United States however there is so much confusion in the opinion of the courts, and such a conflict in the cases, that no fixed general rule can be said to have been established. In some cases an absolute rule like that established in England has been laid down or recognized. In other cases the courts have merely found elements of estoppel in the circumstances aside from the question of laches, and have held that, where a considerable time has elapsed since the subscription or purchase was made, or where the subscriber or purchaser has actively participated in the management of the affairs of the corporation, has stood by and permitted it to contract debts, or has received dividends or otherwise enjoyed the benefits of his relations as a stockholder, he cannot rescind and recover what he has paid, or escape liability for what may be due from him, after the corporation has become insolvent * * * al-

though he has not been guilty of laches in discovery of the fraud or in taking steps to rescind after its discovery." 14 C. J. 600.

"But if none of the above conditions exist, and the proof of the alleged fraud is clear, the rescission should be allowed as well after as before the corporation has become insolvent and ceased to be a going concern. In other cases, since it is considered that creditors have no equity superior to that of an innocent stockholder whose subscription or purchase has been procured by fraud, and who is absolutely free from any imputation of laches, it seems to be held broadly that he may rescind for the fraud under such circumstances even after the insolvency of the corporation and as against a receiver." 14 C. J. 601.

III. The "Equitable Trust Fund" doctrine is not so inflexible in this country and in this state that a subscriber to corporation stock will in all cases be liable to creditors of the corporation under that doctrine, after the dissolution of the corporation.

An exception to the "Equitable Trust Fund Rule" is that one induced by fraud to subscribe for stock in a corporation may bring an action to rescind his contract if he does so without any laches on his part, even after the insolvency of the corporation.

This exception has been applied in cases where the creditors extended credit before the stock subscriptions sued on were executed, for the simple reason that, if the credits were extended before the stock subscriptions were made, they could not have been extended in reliance thereon. Lamb v. Bonesteel, 186 Iowa 971, 173 N. W. 13; Lex v. Selway Steel Co., 203 Iowa 806, 206 N. W. 586; State v. Associated Packing Co., 210 Iowa 767, 227 N. W. 627, 41 A. L. R. 690, 702; 46 A. L. R. 484; Independent V. & S. Co. v. Iowa Merc. Co., 184 Iowa 154, 168 N. W. 782.

In Lamb v. Bonesteel, 186 Iowa 971, 173 N. W. 13, we said:

"The defendant makes the point at the outset that this case is ruled by our opinion in Independent V. & S. Co. v. Iowa Merc. Co., 184 Iowa 154, 168 N. W. 782, a case involving a subscription to the stock of the same corporation; and unless we are to depart from the rule there followed, we think the contention is well founded. It is true that the holding there announced is, to some extent, at variance with what is usually spoken of as the 'English Rule', the authority of which has been recognized by the courts of some states; but the position taken by us in the cited case is in

harmony with the precedents established in many jurisdictions, and is essentially fair and just. * * * The effect of our holding in the case referred to is to recognize the liability of the defrauded party on his subscription when it is shown 'that there are claims in the hands of the receiver to be satisfied out of the corporate assets, *that accrued after the subscriber had obligated himself as a stockholder*'; [italics ours] and that this circumstance or situation is not to be presumed from the mere general statement or proof that the concern was insolvent when the receiver was appointed. * * * the extent to which the so-called 'English Rule' governed the liability of subscribers to corporate stock had not been definitely settled or limited in this state. The judgment appealed from has the support of many authorities; but, as the question was still, to some extent, an open one in this jurisdiction, we have felt justified in adopting the rule which seems most in harmony with sound principle."

In the case of Lex v. Selway Steel Corp., 203 Iowa 812, 206 N. W. 586, 595, we said:

"There is in these cases no repudiation of the doctrine that, upon the commencement of proceedings in insolvency, the unpaid subscriptions become a trust fund for the benefit of creditors. On the contrary, the rule is expressly recognized, with the qualification that it operates where there are debts of the corporation to be paid by the receiver *that were incurred subsequent to the subscription.*" (Italics ours.)

IV. There may well be another exception to the "Equitable Trust Doctrine" applied in this state; and this exception is strongly intimated, if not adopted, in the case of Udell Savings Bank v. Hollingsworth, 194 Iowa 441, 189 N. W. 944. This exception is based upon the theory that the rule should not apply where the charter of the purported corporation was obtained through false and fraudulent representations made to the state in securing it, and where the charter was revoked and annulled and the corporation dissolved and wiped out *on the ground of fraud practiced against the state in securing the articles of incorporation at the inception of its organization.*

The facts in the Udell case were almost similar to those herein. In that case the note sued on was executed to the Associated Packing Company in part payment of a subscription for stock in that

company. The note was later transferred to plaintiff. One of the defenses was that, in an action brought by the attorney-general in behalf of the state, the Associated Packing Company was dissolved, and its charter revoked, because of fraud practiced upon the state, because of a conspiracy between the officers of the corporation and the officers of the Associated Finance Company, and because the note given in payment for the subscription to the capital stock was without consideration. In that case (194 Iowa 440, 189 N. W. 944) we held that the decree, rendered in State v. Associated Packing Company, dissolving the corporation and revoking its articles, was in legal effect a holding that the corporation never had any valid existence. The court there held that the maker of the note had a right to plead fraud and rely upon a decree of dissolution as evidence of a failure of consideration, and that an absence of consideration is a defense to an action on a note except as against a bona fide holder thereof. In referring to the original decree revoking the charter of the Associated Packing Company, we said:

"The finding of the court upon the issue of fraud in the adjudication of the status was a material and necessary part of the judgment, and inhered therein. It did not involve collateral matters or litigation. The status of the subject-matter fixed by the decree comprehends and includes the legal effect of the decree which in its broadest scope is binding and conclusive upon the world. By virtue of the decree it was a declaration *in legal effect that the corporation never had a valid existence as such.* This is a part of the status. Purchasers of stock, of which the maker of the note in suit was one, by operation of law became creditors of the Associated Packing Company to the extent of payments made to the company. This case is not one in which a corporation validly and legally organized has been dissolved for some reason occurring subsequently to the granting of the franchise or for reasons arising subsequently to the negotiation and purchase of the note or instrument in suit." Udell v. Hollingsworth, 194 Iowa 440, page 445, 189 N. W. 944, 946.

There was no appeal from the decree in the original action revoking and canceling the charter of the Associated Packing Company and that decree is therefore the law of this case.

The "Equitable Trust Fund" rule was adopted and followed in cases where a corporation, duly organized, became insolvent, or

where for some other reason, occurring after the organization of the corporation, it was dissolved. In none of such cases were the articles of incorporation revoked, annulled, or cancelled because of fraud practiced upon the state at its inception. If, as in this case, the articles of incorporation were revoked and the corporation annulled and dissolved, it then became impossible for any subscriber to receive any stock subscribed. In such cases there would therefore be absolutely no consideration for the subscription. In the Udell case, 194 Iowa 440, on page 443, 189 N. W. 944, 945, we also said:

"The decree in the dissolution case *fixed the status of the corporation, and that status is binding on the world.* The adjudication of a status is a judgment *in rem.* The *res* relates to the corporate franchise. The prayer of the petition of the state of Iowa asked 'for the dissolution of the corporation, the Associated Packing Company, that its charter be revoked and a liquidation had', and the decree entered recites that 'the same is hereby granted, and the charter of said corporation is hereby annulled and revoked and the corporation is ordered dissolved and its assets distributed'. The decree in the dissolution case recited by a finding *that there was fraud practiced upon the state of Iowa in the application for the charter; that there was a conspiracy between the officers of the corporation and the officers of the Associated Finance Company to defraud the purchasers of stock in the Packing Company;* that shares of capital stock were issued without having received the full par value therefor, in money or in property; *that false written reports and statements of its financial affairs were made by the Packing Company; that it was a promotion scheme; and that its incorporators did not have a good-faith intention to engage in the packing business."* (Italics ours.)

The court further says:

"The decree was 'a solemn declaration proceeding from an accredited quarter concerning the status of the thing adjudicated upon, which very declaration operates accordingly upon the status of the thing adjudicated upon, and ipso facto renders it such as it is thereby declared to be.' "

See, also, Old Dominion Copper M. & S. Co. v. Bigelow, 203 Mass. 159, 89 N. E. 193, 40 L. R. A. (N. S.) 314; State v. Mc-

Donald, 108 Wis. 9, 84 N. W. 171, 81 Am. St. Rep. 878; Giblin v. North Wis. Lbr. Co., 131 Wis. 261, 111 N. W. 499, 120 Am. St. Rep. 1040; In re Union El. R. Co., 112 N. Y. 61, 19 N. E. 664, 2 L. R. A. 359; Tremblay v. Aetna Life Ins. Co., 97 Me. 547, 55 A. 509, 94 Am. St. Rep. 521; Hilton v. Snyder, 37 Utah, 384, 108 P. 698, Ann. Cas. 1912C, 241; 2 Freeman on Judgments (4th Ed.) Chap. 28; Tilt v. Kelsey, 207 U. S. 43, 28 S. Ct. 1, 52 L. Ed. 95; Gorham Co. v. United Eng. & Cont. Co., 202 N. Y. 342, 95 N. E. 805; Amparo Min. Co. v. Fidelity Trust Co., 74 N. J. Eq. 197, 71 A. 605; Cross v. Armstrong, 44 Ohio St. 613, 10 N. E. 160.

The defendants in this action did not become subscribers until after the corporate charter was issued; they were not promoters of the scheme to organize and incorporate a pretended "packing corporation". In a dissenting opinion in Kosman v. Thompson, Iowa, 211 N. W. 878 (not officially reported), Justice Stevens said substantially:

"The vital inquiry at this point is: What is the effect of the court's decree, if any, upon the right of the receiver to pursue alleged subscribers for stock in an action to compel the payment of 50% of the amount of their unpaid individual subscriptions? This right exists under some circumstances, although fraud in the inception of the subscription contract is established. The principal creditor of the corporation became such as the result of the purchase of more than a million dollars worth of the notes taken by the alleged corporation for stock subscriptions. Manifestly, these notes were subject to the defense of fraud, if any existed, in the procurement thereof in an action in the name of a holder having notice thereof. The notes were returned to the corporation and a claim established by the holder against the corporation. * *· * Likewise fraud if shown, would be a complete defense to the notes in an action brought by the receiver thereon. The subscribers for stock, who did not rescind *before the appointment of a receiver*, it is contended, are, by virtue of the 'Trust Fund Doctrine' estopped to set up fraud in the inception of the contract and must respond to the demand of the receiver.

"We have found no case in which the 'Trust Fund Doctrine' has been recognized and applied where a receiver was appointed at the suit of the sovereign or upon other grounds than that *of insolvency* or misconduct or mismanagement occurring after the organization of the corporation. Indeed, insolvency of the corporation

is the basis of the doctrine. The word 'insolvency' nowhere appears in the petition of the state for the appointment of a receiver nor in the decree of the court. No such issue was involved. The alleged corporation was never in a business sense a 'going concern'. But a fraction of its capital stock was ever paid, *and it never engaged in the packing business*. The effect of the decree entered in the suit of the sovereign was to destroy utterly the corporate existence, to cancel, annul, and revoke the charter, and to wipe out every corporate element of the company. No stock was ever delivered to the alleged subscribers, who are the defendants in the action commenced by the receiver. *None ever could have been delivered after the decree in question was entered.* There was a total and absolute failure of consideration for the subscription contracts.

"The situation is not one arising from the insolvency of a 'going concern', a legally organized and authorized entity, but the situation presented is of a scheme devised to defraud the state, the public, and the subscribers for the stock. In such circumstances *the company never existed as a corporation, either de facto or de jure.* There is nothing, therefore, in this case upon which to hang the 'Trust Fund Doctrine'. All parties dealing with the concern may have been alike innocent of its fraudulent character and purpose. If so, one was as innocent as the other. No one dealt with the company as a 'going concern', as a business enterprise, or as a packing company. We can conceive of no principle of equity upon which the defrauded subscribers for stock, who received nothing for their subscriptions and who, by the action of the sovereign were prevented from ever receiving any consideration therefor, should be held to respond to the receiver for the benefit of the creditors of the fraudulent nonexistent organization. The decree of the court completely wiped out and destroyed even the colorable corporate existence, and this decree became effective, in so far as the status of the entity is concerned, as of the date on which the charter was granted. The effect of the revocation, therefore, was to leave the situation exactly the same as though no charter had ever been granted.

"The subscribers for stock never became stockholders in any legal or real sense whatever. The pretended corporation had no power to sell or deliver corporate stock. It never had a valid corporate existence. The court so found and decreed. It further found and decreed that the company was organized for a fraudulent purpose and to conduct a fraudulent and therefore unlawful busi-

ness, and upon these grounds revoked and canceled its charter. It is true the sovereign could have waived these matters. It did not elect to do so. The fraudulent conduct and pretenses of the original promoters, found by the court to have existed, were all charged in the petition and constitute the grounds therein for the surrender of the charter and the dissolution of the concern.

"Nothing shown to have been done by the defrauded subscribers for stock was of a character, or sufficient to estop them to deny liability on their subscription contracts in favor of creditors, even though they may have believed the subscriptions bona fide. The trust fund doctrine is applied only in the event of the insolvency of a corporation or for some misconduct or mismanagement arising thereafter; and it would be manifestly unjust and a reproach upon this court to apply this doctrine to the case before us. The fraud, deceit, and bad faith which induced them to become creditors was practiced by the promoters of the business and not the subscribers.

"The holding in the Udell case is both sound and just. Better that the trust fund doctrine be eliminated in this state than applied in the face of the decree entered in the original case. Under the expressed terms of the decree there never was more than a mere colorable corporation entity which was taken away thereby."

Having been conceived in fraud and its franchise obtained thereby, and its charter having been canceled and revoked therefor, the Associated Packing Company never had either a *de facto* or *de jure* existence as a corporation. A purported corporation having only colorable authority to exist and transact business, and which has involuntarily surrendered its charter to the state because of fraud practiced upon it in obtaining such charter, is held by all of the authorities to have never had either a de jure or de facto existence. 1 Thompson on Corp. 256; 14 C. J. 122; Todd v. Ferguson, 1o1 Mo. App. 624, 144 S. W. 158, 159; Harrill v. Davis (C. C. A.) 168 F. 187, 22 L. R. A. (N. S.) 1153; Marion Trust Co. v. Bennett, 169 Ind. 346, 82 N. E. 782, 124 Am. St. Rep. 228; First Nat. Bank v. Trebein Co., 59 Ohio St. 316, 52 N. E. 834; Knowlton v. Congress & Empire Spring Co. 57 N. Y. 519; Imperial Bldg. Co. v. Board of Trade, 238 Ill. 100, 87 N. E. 167; Nelson v. Consolidated Ind. School Dist., 181 Iowa 424, 164 N. W. 874. See Kosman v. Thompson, Iowa, 211 N. W. 878, 889 (not officially reported).

The general rule is that a *bona fide* attempt to incorporate under the law is one of the essentials of a "de facto" corporation; and therefore it has been held in a number of cases that, although there may be an estoppel under some circumstances, there is no corporation, either "de jure" or "de facto", if the attempted organization is a fraud on the law under which corporate existence is claimed. 14 C. J. 218, section 227; Harrill v. Davis, 168 F. 187, 94 C. C. A. 47, 22 L. R. A. (N. S.) 1152; Christian Grocery Co. v. Fruitdale Lumber Co., 121 Ala. 340, 25 So. 566; Niemeyer v. Little Rock Junction Ry. Co., 43 Ark. 111; Montgomery v. Forbes, 148 Mass. 249, 19 N. E. 342, 343; Todd v. Ferguson, 161 Mo. App. 624, 144 S. W. 158.

A pretended corporation, formed by its promoters by fraudulently procuring a certificate of incorporation is a nullity. Todd v. Ferguson, 161 Mo. App. 624, 144 S. W. 158; Hyatt v. Van Riper, 105 Mo. App. 664, 78 S. W. 1043; Wonderly v. Booth, 36 N. J. Law, 250; Elizabethtown Gaslight Co. v. Green, 49 N. J. Eq. 329, 24 A. 560; Card v. Moore, 173 N. Y. 598, 66 N. E. 1105; Empire Mills v. Alston Grocery Co. (Tex. App.) 15 S. W. 200; Id. (Tex. App.) 15 S. W. 505, 12 L. R. A. 366; Hill v. Beach, 12 N. J. Eq. 31.

This is consistent with Kosman v. Thompson, 204 Iowa 1254, 215 N. W. 261. While there *de jure* and *de facto* corporations were defined, yet we did not hold that the Associated Packing Company was in fact a corporation. Our holding in the Kosman case was and is to the effect that the state could dissolve the status.

■ VI. Appellee, in a reply filed at the conclusion of the trial, claims that the defendant is estopped from pleading want of corporate existence on the part of the Associated Packing Company. The receiver's belated plea of estoppel alleges that defendant is estopped from alleging this defense because of a judgment entered against him several years preceding, on a claim filed in the receivership proceedings. His claim was for a return of the money paid on his stock subscription contract, for a rescission thereof.

No claim was made by the receiver in that proceeding for any indebtedness which might be due from defendant upon his stock subscription. That issue was not litigated in the prior proceeding. The issues that the corporation had not been legally organized, had never become a duly incorporated institution, or that its charter was canceled and revoked, were not raised or litigated in that proceeding, and we expressly so held therein. State v. Associated Pack-

ing Co., 206 Iowa 405, 220 N. W. 6. It is our conclusion that the matter alleged in the reply does not constitute an estoppel.

For all of the reasons hereinabove mentioned, we are of the opinion that the lower court erred in sustaining appellee's motion for a directed verdict and in failing to sustain appellant's motion for a directed verdict in his favor. The judgment of the lower court is therefore hereby reversed, and the case remanded for proceedings in harmony herewith.—Reversed.

All Justices concur.